## NICHOLS, ASSIGNEE, *v.* EATON ET AL.

1. A devise of the income from property, to cease on the insolvency or bankruptcy of the devisee, is good; and a limitation over to his wife and children, upon the happening of such contingency, is valid, and the entire interest passes to them : but if the devise be to *him* and his wife or children, or if he has in any way a vested interest thereunder, that interest, whatever it may be, may be separated from that of his wife or children, and paid over to his assignee in bankruptcy.

2. Where, upon certain trusts therein limited and declared, a devise of real and personal property to trustees directed them to pay the income arising therefrom to A., and provided, that if he should alienate or dispose of it, or should become bankrupt or insolvent, the trust expressed respecting it should thereupon cease and determine, and authorized them, in the event of such bankruptcy or alienation, to apply it to the support of the wife, child, or children, of A., and, if there were none, to loan or reinvest it in augmentation of the principal sum or capital of the estate until his decease, or until he should have a wife or children capable of receiving the trust forfeited by him; and also provided that the trustees might at any time, in their discretion, transfer to him any portion not exceeding one-half of the trust-fund; and in case, after the cessation of income on account of any cause specified in the will other than death, it should be lawful for the trustees, in their discretion, but without its being obligatory upon them, to pay to or apply for the use of A., or that of his wife and family, the income to which he would have been entitled in case the forfeiture had not happened, — *Held,* that the bankruptcy or insolvency of A. terminated all his legal vested right

in the estate, and left nothing in him to which his creditors or his assignee in bankruptcy could assert a valid claim. *Held, further,* that a payment voluntarily made to A., after his bankruptcy, by the trustees under the terms of the discretion reposed in them cannot be subjected to the control of his assignee.

3. No case is cited or known to the court which goes so far as to hold that an absolute discretion in trustees — a discretion which, by the express language of the will, they are under no obligation to exercise in favor of the bankrupt — confers such an interest on the latter as can be successfully asserted in any court by him or his assignee in bankruptcy.

4. When trustees are in existence, and capable of acting, a court of equity will not interfere to control them in the exercise of a discretion vested in them by the instrument under which they act.

5. While the will in question is considered valid in all its parts upon the extremest doctrine of the English Chancery Court, this court does not wish it understood that it accepts the limitations which that court has placed upon the power of testamentary disposition of property by its owner; nor does it sanction the doctrine that the power of alienation is a *necessary* incident to a devisee's life-estate in real property, or that the rents and profits of real and the income and dividends of personal property cannot be given and granted by a testator to a person free from all liability for the debts of the latter.

6. If that doctrine be sustained at all, it must rest exclusively on the rights of creditors: but, in this country, all wills or other instruments creating such trust-estates are recorded in public offices, where they may be inspected by every one. The law, in such cases, imputes to all persons concerned notice of all the facts which they might know by inspection. When, therefore, it appears by the record of a will that the devisee holds either a life-estate, or the income, dividends, or rents of real or personal property payable to him alone, to the exclusion of the alienee or creditor, the latter knows that he has no right to look to that estate, or to such income, dividends, or rents, as a fund to which he can resort to enforce the payment of a claim against the devisee. In giving the latter credit, he is neither misled nor defrauded when the object of the testator is carried out by excluding him from any benefit of such a devise.

7. American cases cited and examined.

APPEAL from the Circuit Court of the United States for the District of Rhode Island.

The controversy in this case arises on the construction and legal effect of certain clauses in the will of Mrs. Sarah B. Eaton. At the time of her death, and at the date of her will, she had three sons and a daughter; being herself a widow, and possessed of large means of her own. By her will, she devised her estate, real and personal, to three trustees, upon trusts to pay the rents, profits, dividends, interest, and income of the trust-property to her four children equally, for and during their natural lives, and, after their decease, in trust for such

of their children as shall attain the age of twenty-one, or shall die under that age having lawful issue living; subject to the condition, that if any of her children should die without leaving any child who should survive the testatrix and attain the age of twenty-one years, or die under that age leaving lawful issue living at his or her decease, then, as to the share or respective shares, as well original as accruing, of such child or children respectively, upon the trusts declared in said will concerning the other share or respective shares. The will also contained a provision, that if her said sons respectively should alienate or dispose of the income to which they were entitled under the trusts of the will, or if, by reason of bankruptcy or insolvency, or any other means whatsoever, said income could no longer be personally enjoyed by them respectively, but the same would become vested in or payable to some other person, then the trust expressed in said will concerning so much thereof as would so vest should immediately cease and determine. In that case, during the residue of the life of such son, that part of the income of the trust-fund was to be paid to the wife and children, or wife or child, as the case might be, of such son; and, in default of any objects of the last-mentioned trust, the income was to accumulate in augmentation of the principal fund.

There is another proviso, which, as it is the main ground of the present litigation, is here given *verbatim*, as follows: —

" Provided also, that in case at any future period circumstances should exist, which, in the opinion of my said trustees, shall justify or render expedient the placing at the disposal of my said children respectively any portion of my said real and personal estate, then it shall be lawful for my said trustees, in their discretion, but without its being in any manner obligatory upon them, to transfer absolutely to my said children respectively, for his or her own proper use and benefit, any portion not exceeding one-half of the trust-fund from whence his or her share of the income under the preceding trusts shall arise; and, immediately upon such transfer being made, the trusts hereinbefore declared concerning so much of the trust-fund as shall be so transferred shall absolutely cease and determine; and in case after the cessation of said income as to my said sons respectively, otherwise than by death, as hereinbefore

provided for, it shall be lawful for my said trustees, in their discretion, but without its being obligatory upon them, to pay to or apply for the use of my said sons respectively, or for the use of such of my said sons and his wife and family, so much and such part of the income to which my said sons respectively would have been entitled under the preceding trusts in case the forfeiture hereinbefore provided for had not happened."

The daughter died soon after the mother, without issue, and unmarried. Amasa M. Eaton, one of the sons of the testatrix, failed in business, and made a general assignment of all his property to Charles A. Nichols for the benefit of his creditors, in March, 1867; and in December, 1868, was, on his own petition, declared a bankrupt, and said Nichols was duly appointed his assignee in bankruptcy. Said Amasa was then, and during the pendency of this suit, unmarried, and without children. He, William M. Bailey, and George B. Ruggles (a son of testatrix by a former husband), were the executors and trustees of the will.

It will be seen at once, that whether regard be had to the assignment before bankruptcy, or to the effect of the adjudication of bankruptcy, and the appointment of Nichols as assignee in that proceeding, one of the conditions had occurred on which the will of Mrs. Eaton had declared that the devise of a part of the income of the trust-estates to Amasa M. Eaton should cease and determine; and, as he had no wife or children in whom it could vest, it became, by the alternative provision of the will, a fund to accumulate until his death, or until he should have a wife or child who could take under the trust.

But Nichols, the assignee, construing the whole of the will together, and especially the proviso above given *verbatim*, to disclose a purpose, under cover of a discretionary power, to secure to her son the right to receive to his own use the share of the income to which he was entitled before the bankruptcy, in the same manner afterwards as if that event had not occurred, brought this bill against the said executors and trustees to subject that income to administration by him as assignee in bankruptcy for the benefit of the creditors.

Upon a final hearing the Circuit Court dismissed the bill, and Nichols appealed to this court.

*Mr. Horatio Rogers* and *Mr. C. S. Bradley* for the appellant.

The principles of the law do not permit a debtor to have the use and enjoyment of wealth to the exclusion of any rights of his creditors; and hence in the law of trusts, peculiarly and solely within the cognizance of courts of equity, contrivances for the enjoyment of property by a debtor, and for withholding it from his creditors, are against conscience, and void. *Tillinghast* v. *Bradford*, 5 R. I. 212; *Brandon* v. *Robinson*, 18 Ves. 429; Tud. Lead. Cas. (2d ed.) 862; *Piercy* v. *Roberts*, 1 M. & K. 4; *Kearsley* v. *Woodcock*, 3 Hare, 185; *Wallace* v. *Anderson*, 16 Beav. 533; *Sharp* v. *Casserat*, 20 id. 470; *Carr* v. *Living*, 28 id. 644; Watson's Comp. of Eq., vol. ii. 1149; *Graves* v. *Dolphin*, 1 Sim. 66; *Green* v. *Spicer*, 1 R. & My. 395; *Younghusband* v. *Gisborne*, 1 Coll. 400; Roper on Leg. (4th ed.) 794.

Confessedly no decided case has sustained the validity of a discretion in trustees to give to a bankrupt the entire equitable estate which he had prior to his bankruptcy. The doctrine of chancery plainly is, that attempts, through the so-called discretion of trustees, to secure that result, have ever been considered as fraudulent devices to continue the property in him after the law has taken away his capacity to retain it. Consequently, what remains unapplied belongs to the assignee. *Green* v. *Spicer*, 1 R. & Myl. 395; *Piercy* v. *Roberts*, 1 Myl. & Kee. 4; *Snowden* v. *Dales*, 6 Sim. 524; *Rippon* v. *Norton*, 2 Beav. 63; *Kearsley* v. *Woodcock*, 3 Hare, 185; *Lord* v. *Bunn*, 2 You. & Coll. 98; *Davidson* v. *Chalmers*, 33 Beav. 653.

*Mr. Abraham Payne* and *Mr. Samuel Currey* for the appellees.

It is clear that the assignee in bankruptcy can take only what was vested in the debtor at the date of filing his petition. 1 Benedict D. C. 407; *In re Patterson*, 6 Int. Rev. Rec. 157; *Carleton* v. *Leighton*, 3 Meriv. 667; *Mitchell* v. *Winslow*, 2 Story's C. C. 630; 1 Jarm. on Wills, 816; *Hall* v. *Gill*, 10 Gill & J. 325; *In re Barret*, 2 N. B. 165; *Brown* v. *Heathcote*, 1 Atk. 52; *Mitford* v. *Mitford*, 9 Ves. 100.

The question then is, whether, under the will of Mrs. Eaton, her son Amasa had, at the date of filing his petition in bankruptcy, any vested interest in her estate which could pass to his assignee. There is no question, that, until his bankruptcy,

he had an absolute right to one-fourth of the income of the trust-estate until the death of his sister, and after that time to one-third of such income, so long as he did not attempt to alienate or dispose of it. Upon the occurrence of either of these events, the will provides that the trust in his favor shall immediately cease and determine, and that thereafter the income should be devoted to other trusts.

Such provisions for the cesser of income upon alienation or upon the bankruptcy of the *cestui que trust* are unquestionably valid. *Tillinghast* v. *Bradford*, 5 R. I. 205; *Dommett* v. *Bedford*, 3 Ves. 149; *Brandon* v. *Robinson*, 18 id. 429; *Joel* v. *Mills*, 3 K. & J. 458; *Rochford* v. *Hackman*, 9 Hare, 475; *Cooper* v. *Wyatt et als.*, 5 Madd. Ch. 297; 2 Story Eq., sect. 974; *Rockford* v. *Hardeman*, 10 Eng. L. & Eq. 67.

The powers under which the trustees must act in making payments are merely discretionary. They are expressly declared not to be imperative; and this is the distinction laid down in the books between them and trusts. " Powers," says Wilmot, C. J., " are never imperative : they leave the acts to be done at the will of the party to whom they are given. Trusts are always imperative, and are obligatory upon the conscience of the party intrusted." *Attorney-General* v. *Downing*, Wilm. 23. It is settled that the court will never exercise a mere discretionary power, either in the lifetime of the trustees, or upon their death, or refusal to act. Hill on Trustees, 486. Nor will it interfere to control the trustees acting *bona fide* in the exercise of their discretion. Id. 489; Lewin on Trusts, 538; *Maddison* v. *Andrew*, 1 Ves. 60; *Boss* v. *Godsell*, 1 Yo. & Col. 617.

Payments made by the trustees to Eaton in the exercise of these powers would be in the nature of after-acquired property, to which his assignee has no title. Any thing they may choose to give is as much a free gift as though it came from the bounty of an entire stranger.

MR. JUSTICE MILLER, after stating the case, delivered the opinion of the court.

The claim of the assignee is founded on the proposition, ably presented here by counsel, that a will which expresses a pur-

pose to vest in a devisee either personal property, or the income of personal or real property, and secure to him its enjoyment free from liability for his debts, is void on grounds of public policy, as being in fraud of the rights of creditors; or as expressed by Lord Eldon in *Brandon* v. *Robinson*, 18 Ves. 433, "If property is given to a man for his life, the donor cannot take away the incidents of a life-estate."

There are two propositions to be considered as arising on the face of this will as applicable to the facts stated: 1. Does the true construction of the will bring it within that class of cases, the provisions of which on this point are void under the principle above stated? and 2. If so, is that principle to be the guide of a court of the United States sitting in chancery?

Taking for our guide the cases decided in the English courts, the doctrine of the case of *Brandon* v. *Robinson* seems to be pretty well established. It is equally well settled that a devise of the income of property, to cease on the insolvency or bankruptcy of the devisee, is good, and that the limitation is valid. *Demmill* v. *Bedford*, 3 Ves. 149; *Brandon* v. *Robinson*, 18 id. 429; *Rockford* v. *Hackmen*, 9 Hare; Lewin on Trusts, 80, ch. vii., sect. 2; *Tillinghast* v. *Bradford*, 5 R. I, 205.

If there had been no further provision in regard to the matter in this will than that on the bankruptcy or insolvency of the devisee, the trust as to him should cease and determine; or if there had been a simple provision, that, in such event, that part of the income of the estate should go to some specified person other than the bankrupt, there would be no difficulty in the case. But the first trust declared after the bankruptcy for this part of the income is in favor of the wife, child, or children of such bankrupt, and in such manner as said trustees in their discretion shall think proper. If the bankrupt devisee had a wife or child living to take under this branch of the will, there does not seem to be any doubt that there would be nothing left which could go to his assignee in bankruptcy. The cases on this point are well considered in Lewin on Trusts, above cited; and the doctrine may be stated, that a direction that the trust to the first taker shall cease on his bankruptcy, and shall then go to his wife or children, is valid, and the entire interest passes to them; but that if the devise be to *him*

and his wife or children, or if he is in any way to receive a vested interest, that interest, whatever it may be, may be separated from those of his wife or children, and be paid over to his assignee. *Page* v. *Way*, 3 Beav. 20; *Perry* v. *Roberts*, 1 Myl. & K. 4; *Rippon* v. *Norton*, 2 Beav. 63; *Lord* v. *Bunn*, 2 You. & Coll. Ch. 98. Where, however, the devise over is for the support of the bankrupt and his family, in such manner as the trustees may think proper, the weight of authority in England seems to be against the proposition that any thing is left to which the assignee can assert a valid claim. *Twopenny* v. *Peyton*, 10 Sim. 487; *Godden* v. *Crowhurst*, id. 642.

In the case before us, the trustees are authorized, in the event of the bankruptcy of one of the sons of testatrix without wife or children (which is the condition of the trust as to Amasa M. Eaton), to loan and reinvest that portion of the income of the estate in augmentation of the principal sum or capital of the estate until his decease, or until he shall have wife or children capable of receiving the trust of the testatrix forfeited by him.

There does not seem, thus far, any intention to secure or revest in the bankrupt any interest in the devise which he had forfeited; and there can be no doubt, that, but for the subsequent clauses of the will, there would be nothing in which the assignee could claim an interest. But there are the provisions, that the trustees may, at their discretion, transfer at any time to either of the devisees the half or any less proportion of the share of the fund itself which said devisee would be entitled to if the whole fund were to be equally distributed; and the further provision, that, after the cesser of income provided for in case of bankruptcy or other cause, it shall be lawful, but not obligatory on her said trustees, to pay to said bankrupt or insolvent son, or to apply for the use of his family, such and so much of said income as said son would have been entitled to in case the forfeiture had not happened.

It is strongly argued that these provisions are designed to evade the policy of the law already mentioned; that the discretion vested in the trustees is equivalent to a direction, and that it was well known it would be exercised in favor of the bankrupt.

The two cases of *Twopenny* v. *Peyton* and *Godden* v. *Crow-*

*hurst*, above cited from 10 Sim., seem to be in conflict with this doctrine; while the cases cited in appellant's brief go no farther than to hold, that when there is a right to support or maintenance in the bankrupt, or the bankrupt and his family, a right which he could enforce, then such interest, if it can be ascertained, goes to the assignee.

No case is cited, none is known to us, which goes so far as to hold that an absolute discretion in the trustee — a discretion which, by the express language of the will, he is under no obligation to exercise in favor of the bankrupt — confers such an interest on the latter, that he or his assignee in bankruptcy can successfully assert it in a court of equity or any other court.

As a proposition, then, unsupported by any adjudged case, it does not commend itself to our judgment on principle. Conceding to its fullest extent the doctrine of the English courts, their decisions are all founded on the proposition, that there is somewhere in the instrument which creates the trust a substantial right, a right which the appropriate court would enforce, left in the bankrupt after his insolvency, and after the cesser of the original and more absolute interest conferred by the earlier clauses of the will. This constitutes the dividing-line in the cases which are apparently in conflict. Applying this test to the will before us, it falls short, in our opinion, of conferring any such right on the bankrupt. Neither of the clauses of the provisos contain any thing more than a grant to the trustees of the purest discretion to exercise their power in favor of testatrix's sons. It would be a sufficient answer to any attempt on the part of the son in any court to enforce the exercise of that discretion in his favor, that the testatrix has in express terms said that such exercise of this discretion is not " in any manner obligatory upon them," — words repeated in both these clauses. To compel them to pay any of this income to a son after bankruptcy, or to his assignee, is to make a will for the testatrix which she never made; and to do it by a decree of a court is to substitute the discretion of the chancellor for the discretion of the trustees, in whom alone she reposed it. When trustees are in existence, and capable of acting, a court of equity will not interfere to control them in the exercise of a discretion vested in them by the instrument

under which they act.   Hill on Trustees, 486 ; Lewin on Trusts, 538 ; *Boss* v. *Goodsall*, 1 Younge & Collier, 617 ; *Maddison* v. *Andrew*, 1 Ves. Sr. 60.   And certainly they would not do so in violation of the wishes of the testator.

But, while we have thus attempted to show that Mrs. Eaton's will is valid in all its parts upon the extremest doctrine of the English Chancery Court, we do not wish to have it understood that we accept the limitations which that court has placed upon the power of testamentary disposition of property by its owner.   We do not see, as implied in the remark of Lord Eldon, that the power of alienation is a *necessary* incident to a life-estate in real property, or that the rents and profits of real property and the interest and dividends of personal property may not be enjoyed by an individual without liability for his debts being attached as a necessary incident to such enjoyment.   This doctrine is one which the English Chancery Court has ingrafted upon the common law for the benefit of creditors, and is comparatively of modern origin.   We concede that there are limitations which public policy or general statutes impose upon all dispositions of property, such as those designed to prevent perpetuities and accumulations of real estate in corporations and ecclesiastical bodies.   We also admit that there is a just and sound policy peculiarly appropriate to the jurisdiction of courts of equity to protect creditors against frauds upon their rights, whether they be actual or constructive frauds.   But the doctrine, that the owner of property, in the free exercise of his will in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this court.

If the doctrine is to be sustained at all, it must rest exclusively on the rights of creditors.   Whatever may be the extent of those rights in England, the policy of the States of this Union, as expressed both by their statutes and the decisions of their courts, has not been carried so far in that direction.

It is believed that every State in the Union has passed statutes by which a part of the property of the debtor is exempt from seizure on execution or other process of the courts; in short, is not by law liable to the payment of his debts. This exemption varies in its extent and nature in the different States. In some it extends only to the merest implements of household necessity; in others it includes the library of the professional man, however extensive, and the tools of the mechanic; and in many it embraces the homestead in which the family resides. This has come to be considered in this country as a wise, as it certainly may be called a settled, policy in all the States. To property so exempted the creditor has no right to look, and does not look, as a means of payment when his debt is created; and while this court has steadily held, under the constitutional provision against impairing the obligations of contracts by State laws, that such exemption laws, when first enacted, were invalid as to debts then in existence, it has always held, that, as to contracts made thereafter, the exemptions were valid.

This distinction is well founded in the sound and unanswerable reason, that the creditor is neither defrauded nor injured by the application of the law to his case, as he knows, when he parts with the consideration of his debt, that the property so exempt can never be made liable to its payment. Nothing is withdrawn from this liability which was ever subject to it, or to which he had a right to look for its discharge in payment. The analogy of this principle to the devise of the income from real and personal property for life seems perfect. In this country, all wills or other instruments creating such trust-estates are recorded in public offices, where they may be inspected by every one; and the law in such cases imputes notice to all persons concerned of all the facts which they might know by the inspection. When, therefore, it appears by the record of a will that the devisee holds this life-estate or income, dividends, or rents of real or personal property, payable to him alone, to the exclusion of the alienee or creditor, the latter knows, that, in creating a debt with such person, he has no right to look to that income as a means of discharging it. He is neither misled nor defrauded when the object of the testator is carried out by excluding him from any benefit of such a devise.

Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will, why a testator who *gives*, who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift, during the life of the donee.   Why a parent, or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self-protection, should not be permitted to do so, is not readily perceived.

These views are well supported by adjudged cases in the State courts of the highest character.

In the case of *Fisher* v. *Taylor*, 2 Rawle, 33, a testator had directed his executors to purchase a tract of land, and take the title in their name in trust for his son, who was to have the rents, issues, and profits of it during his life, free from liability for any debts then or thereafter contracted by him.   The Supreme Court of Pennsylvania held that this life-estate was not liable to execution for the debts of the son.   "A man," says the court, "may undoubtedly dispose of his land so as to secure to the object of his bounty, and to him exclusively, the annual profits.   The mode in which he accomplishes such a purpose is by creating a trust-estate, explicitly designating the uses and defining the powers of the trustees. . . . Nor is such a provision contrary to the policy of the law or to any act of assembly.   Creditors cannot complain because they are bound to know the foundation on which they extend their credit."

In the subsequent case of *Holdship* v. *Patterson*, 7 Watts, 547, where the friends of a man made contributions by a written agreement to the support of himself and family, the court held that the instalments which they had promised to pay could not be diverted by his creditors to the payment of his debts; and Gibson, C. J., remarks, that "the fruit of their bounty could not have been turned from its object by the defendant's creditors, had it been applicable by the terms of the trust to his personal maintenance; for a benefactor may certainly provide for the maintenance of a friend, without exposing his bounty to the debts or imprudence of the beneficiary."

In the same court, as late as 1864, it was held that a devise to a son of the rents and profits of an estate during his natural life, without being subject to his debts and liabilities, is a valid trust; and, the estate being vested in trustees, the son could not alienate. *Shankland's Appeal*, 47 Penn. St. 113.

The same proposition is either expressly or impliedly asserted by that court in the cases of *Ashurst* v. *Given*, 5 W. & S. 323; *Brown* v. *Williamson*, 36 Penn. St. 338; *Still* v. *Spear*, 45 id. 168.

In the case of *Leavitt* v. *Bierne*, 21 Conn. Waite, J., in delivering the opinion of the court, says, " We think it in the power of a parent to place property in the hands of trustees for the benefit of a son and his wife and children, with full power in them to manage and apply it at their discretion, without any power in the son to interfere in that management, or in the disposition of it until it has actually been paid-over to him by the trustees;" and he proceeds to argue in favor of the existence of this power, from the vicious habits or intemperate character of the son, and the right of the father to provide against these misfortunes.

In the case of *Nickell et al.* v. *Handly et al.*, 10 Gratt. 336, the court thus expresses its view on the general question, though not, perhaps, strictly necessary to the judgment in that case: " There is nothing in the nature or law of property which would prevent the testatrix, when about to die, from appropriating her property to the support of her poor and helpless relatives, according to the different conditions and wants of such relatives; nothing to prevent her from charging her property with the expense of food, raiment, and shelter for such relatives. There is nothing in law or reason which should prevent her from appointing an agent or trustee to administer her bounty."

In the case of *Pope's Executors* v. *Elliott & Co.*, 8 Ben. Monr. 56, the testator had directed his executors to pay for the support of Robert Pope the sum of $25 per month. Robert Pope having been in the Rocky Mountains until the sum of $225 of these monthly payments had accumulated in the hands of the executors, his creditors filed a bill in chancery, accompanied by an attachment, to subject this fund to the payment of their debt.

The Court of Appeals of Kentucky say that it was the manifest intent of the testator to secure to Robert the means of support during his life to the extent of $25 per month, or $300 per year; and that this intent cannot be thwarted, either by Robert himself by assignment or alienation, or by his creditors seizing it for his debts, unless the provision is contrary to law or public policy. After an examination of the statutes of Kentucky and the general principles of equity jurisprudence on this subject, they hold that neither of these are invaded by the provision of the will.

The last case we shall refer to specially is that of *Campbell* v. *Foster*, 35 N. Y. Court of Appeals, 361.

In that case it is held, after elaborate consideration, that the interest of a beneficiary in a trust-fund, created by a person other than the debtor, cannot be reached by a creditor's bill; and, while the argument is largely based upon the special provision of the statute regulating the jurisdiction of the court in that class of cases, the result is placed with equal force of argument on the general doctrines of the Court of Chancery, and the right of the owner of property to give it such direction as he may choose without its being subject to the debts of those upon whom he intends to confer his bounty.

We are not called upon in this connection to say how far we would feel bound, in a case originating in a State where the doctrine of the English courts had been adopted so as to become a rule of property, if such a proposition could be predicated of a rule like this. Nor has the time which the pressure of business in this court authorizes us to devote to this case permitted any further examination into the decisions of the State courts. We have indicated our views in this matter rather to forestall the inference, that we recognize the doctrine relied on by appellants, and not much controverted by opposing counsel, than because we have felt it necessary to decide it, though the judgment of the court may rest equally well on either of the propositions which we have discussed. We think the decree of the court below may be satisfactorily affirmed on both of them.

Other objections have been urged by counsel; such as that the bankrupt is himself one of the trustees of the will, and

will exercise his discretion favorably to himself. But there are two other trustees, and it requires their joint action to confer on him the benefits of this trust. It is said that one of them is mentally incompetent to act; but this is not established by the testimony. It is said also, that, since his bankruptcy, the defendant, Amasa, has actually received $25,000 of this fund; and that should go to the assignee, as it shows conclusively that the objections to the validity of the will were well founded.

But the conclusive answer to all these objections is, that, by the will of decedent, — a will which, as we have shown, she had a lawful right to make, — the insolvency of her son terminated all his legal vested right in her estate, and left nothing in him which could go to his creditors, or to his assignees in bankruptcy, or to his prior assignee; and that what may have come to him after his bankruptcy through the voluntary action of the trustees, under the terms of the discretion reposed in them, is his lawfully, and cannot now be subjected to the control of his assignee.                *Decree affirmed.*