THOMAS A. SMILEY and others *v.* STEPHEN M. JONES and others.

## October Term, 1876.

EXECUTORY TRUSTS — EXTINGUISHED BY MERGER AND LAPSE OF TIME. — The testator, who died in 1823, by his will authorized his executor named, whensoever he might think it advisable for the interest of the testator's children, to sell any or all of his real estate, and vest the proceeds, or such part thereof as he might think right, in other real estate for the joint benefit of his wife and children, with power to apply any part of the proceeds in the support of the widow, and in the support and education of the children. The executor renounced, and the widow became administratrix with the will annexed, but executed none of these directions. The land was afterwards partitioned, the share of two of the heirs being set apart to them, and the residue of the shares left in common. On October 10, 1876, one of the children, and the heirs of another, filed the bill against the widow, and two persons in possession of the land claiming under the other heirs, for a construction of the will, and a sale of the land to raise money for the payment of legacies charged thereon in favor of complainants. *Held,* on demurrer, that the bill could not be maintained.

*J. B. White,* for complainants.
*Poston & Henderson,* for defendants.

THE CHANCELLOR : — On demurrer. The bill shows that, in the fall of 1823, Robert Smiley died in this county, leaving a will, which was proved and recorded on December 19, 1823, and upon the construction of which the rights of the complainants depend. The testator left a widow and seven children him surviving. He appointed John Nichol executor of his will, who, however, renounced, and Araminta Smiley, his widow, was appointed and qualified as administratrix with the will annexed. The bill states that the administratrix administered the estate strictly " without attempting to execute the trusts of the will." She did not dispose of either the negroes or lands of the estate, but kept them, and used the rents and hires for the support of herself and children. About the year ——, upon an application to the ——— Court of this county, a decree was made set-

ting apart a portion of said real estate to two of the testator's children named, " in full of their respective interests in said estate, leaving the remainder of said estate to the five other children as tenants in common." Some time afterwards, Robert G. Smiley, another of the testator's children, bought the interest of two of his sisters in the said common property, and took their deeds of conveyance therefor, being each one-seventh. After Robert G. Smiley became thus possessed of three-sevenths of said common property, which consisted of a lot 92 by 111 feet,. on the corner of Cedar and Cherry Streets, in Nashville, on which the Commercial Hotel is situated, he sold said property ; and defendants Jones and Fulghum claim to be the· owners of the whole of said property. The bill charges. that all the parties claiming under Robert G. Smiley had notice of the state of the title, and shows that the defendant Fulghum is a purchaser of the property from the defendant Jones at $40,000, and that the purchase-money is. not fully paid.

The bill was filed October 10, 1876, by Thomas T.. Smiley, the oldest son of the testator, Robert Smiley, and' by the heirs and widow of Alexander H. Smiley, another son of the testator, against Araminta Smiley, the widow of' the testator, and Stephen M. Jones and J. G. Fulghum. The complainants claim two-sevenths of the said realty, —. Thomas T. Smiley one-seventh, and the other complainants. the other seventh. They ask a construction of the will,. and claim that they " are entitled to a legacy in money,. charged upon the said property by the will of the said Robert Smiley, subject to a life-estate of the said Araminta. Smiley, or to their just proportion of her support for life ; that the whole of said property is trust property for the· support of their mother, said Araminta, for life, and then to be sold to raise money for the payment of legacies."

The will of Robert Smiley gives certain personal property to his wife absolutely, the use of a certain negro for

life, — the negro to go, upon her death, to his children, — and his stock in trade for the purpose of supporting herself and children, and recommends her to continue the business. The rest of the negroes the testator devises to his executor, "to be kept for the use of my wife and children, or to be disposed of by him, in his discretion, for the benefit of my wife and children in equal proportions."

The provisions of the will touching the testator's realty are in these words : " I hereby authorize and empower my executor, if and whensoever he may think it advisable for the interest and benefit of my children, to sell and convey for the best price, and on the best terms he can, any or all of my real estate, and to vest the proceeds thereof, or such part thereof as he may think right, in other real estate, for the joint benefit of my wife and children, and the part coming to my wife to revert to my children at her death. I also give my executor authority and discretionary powers to apply any part of the proceeds of the sale of my negroes, if he should sell them, and of the sales of my real estate, for the support and education of my dear children, and for the support of my wife, and my aged friend and mother-in-law, Mrs. Love, who I wish to remain with my wife during her life." * * * " As my children respectively attain the age of twenty-one years, or marry, it is my wish and direction that my executor shall give to each one his or her respective share, or equal proportion of such part of my estate as he shall sell, and which shall not have been used in supporting and educating my children, or supporting my wife."

This will contains no words conveying the testator's land to the executor, or vesting him with the legal title. The title descended to the testator's heirs, subject to be divested by the execution of the power of sale. In this view, no legal title to the land, or any part of it, either for life or otherwise, ever vested in Araminta Smiley, the widow. Her interest, if she has any, is equitable, and consists, should the

will be construed to create a power coupled with a trust, in the right to enforce that trust through the courts within the time allowed by law. But she has allowed fifty-three years to elapse, and is not, even now, asking such enforcement. Her right, whatever it may be called, is gone forever, and the complainants have no *status* in this court based upon such right. They must stand upon their own rights.

If the will created a trust which could be enforced in favor of the widow, that trust was to a support out of the proceeds of the sale, and to a joint interest with her children in so much of the proceeds of sale as might be reinvested in land for their joint benefit. As to so much of the fund as she might claim for her support, there is no remainder or reverter provided by the will in favor of the children, and in the very nature of the case there could be none. That branch of the trust may be dropped out of view. Her share in any joint investment would be one-eighth, and the reversion or remainder of each child therein one-seventh of one-eighth. But there never having been any joint investment, and she having, by laches, lost any right she may have ever had to enforce it, the legal title to so much of the land as represents this one-seventh of one-eighth would be in the children, free from the trust; the trust would be merged in the title, and could not sustain a remainder. It would be absurd to allow the holders of the legal title *ab initio*, which has been freed from a trust, to set up a trust, for their own purposes, long since abandoned and lost by the beneficiary, and not now claimed by her. The claim, therefore, that the trust in remainder has been kept alive for the complainants by this extinguished trust, so as to give them any *status* in a court of equity against third persons by reason thereof, is wholly untenable. They are not entitled " to a legacy in money " charged upon the property, subject to the life-estate, or any other estate of the said Araminta, for no such legacy is given by the will subject to such estate. And they are not entitled to enforce a sale of land to which they have the absolute title upon a trust extinguished in their favor.

The will only clothes the executor named with the power, "if he may think it advisable for the interest and benefit of the children," to sell any of the testator's lands, and to vest "such part thereof as he may think right" for the joint benefit of the testator's wife and children. The only interest of the wife, under the will, to which the children would have a reverter, is in such lands as the executor may choose to buy with the proceeds of sale made under the power. It was left to the judgment and discretion of the particular executor named, not only whether he would sell any of the lands, but whether, if he did sell, he would vest any portion of the proceeds "for the joint benefit" of the wife and children. The power to sell, in the first instance, was purely discretionary; the *quantum* of investment after he did sell was equally discretionary. The individual selected might well avoid such responsibility, and he did renounce accordingly. The power was, I think, personal and discretionary, over which, if it had not been abandoned, lost, and extinguished by lapse of time, and was *recenti facto*, the courts would have no control. *Deadrick* v. *Armour*, 10 Humph. 588; *Belote* v. *White*, 2 Head, 703; *Fontain* v. *Ravenel*, 17 How. 369; *Nichols* v. *Eaton*, 1 Otto, 716; *Lancashire* v. *Lancashire*, 2 Phill. 657; *Hibbard* v. *Lamb*, Amb. 309; *Down* v. *Worrall*, 1 Myl. & K. 561; *Pink* v. *De Thuissey*, 2 Mad. 187; *Cole* v. *Ward*, 16 Ves. 27. And it is an inflexible rule that the non-execution of a power will not be aided. *Tomkin* v. *Sandys*, 2 P. W. 227, note; *Tollet* v. *Tollet*, 2 P. W. 489.

I am of opinion, both upon the ground of the discretionary character of the trust, and that the trust, if coupled with an interest, has been extinguished in favor of the complainants and merged in their legal title to the land, that the complainants show no sufficient case on the face of their bill for coming into this court, so far as they seek any relief based upon the rights of Araminta Smiley.

Considered as a bill for the assertion of their own independent rights under the will, the complainants are in this

attitude ; they are seeking to enforce a power of sale of land for the purpose of securing a smaller interest in the proceeds than they have had in the land itself for over half a century.   Such a case is suspicious in the highest degree. Unless fully explained on the face of the bill, their demand would be *strictissimi juris,* and should be subjected to the most rigid scrutiny.   No satisfactory explanation, in fact no explanation whatever, is given for so anomalous a proceeding.   The bill is distressingly meagre, and barren of facts and dates.   I have had occasion to say in a recent case *(French* v. *Dickey)* at this term, that, although ordinarily every intendment, upon demurrer, be in favor of the complainant, and that facts not appearing on the face of the bill must be brought before the court by proper pleading, yet the rule does not apply to an obviously stale demand, long since barred by the statute of limitations and lapse of time. In such a case, it is for the party seeking relief to take his case out of the bar by showing necessary dates and facts. General and vague allegations will not suffice.   *A fortiori,* if the character of the litigation is, as above shown, upon any ordinary hypothesis, contrary to the complainant's own interests.

This is not a bill to remove a cloud from the complainants' title.   For, upon its own showing, the title is absolute and clear.   It is not a suit for the land at all.   The object of the bill is to enforce the trusts of a will, so as to give the complainants their interest, or, as the bill styles it, their " legacy " in the proceeds.   But the will was proved over fifty years ago, and such a right of action is clearly barred, so far as the complainants' direct rights are concerned, — and these are what we are now considering, — by laches and lapse of time.   The facts disclosed show, moreover, that the complainants have had for an indefinite period the absolute title to the land, and may carve any equity out of it they please without coming into this court.

There is no statute of limitations to a bill filed to execute

the testamentary trusts of a will proved when this will was. But that means, when the bill is filed against the executor or trustee who was bound to execute the trust. The executor in this case renounced, and it is conceded that the administratrix with the will annexed had, under the law as it stood at her qualification, nothing to do with these trusts, and she is not made a party in her representative capacity. The bill is only to execute the trusts as to the two-sevenths share of the complainants, and shows that the title to this two-sevenths is not in the defendants, but in the complainants. Jones and Fulghum, according to the bill, have only title to the other five-sevenths. The bill is, therefore, not against a trustee, or any person occupying the position of a trustee as to the shares in question. It is filed against nobody, unless the court, by imagination "all compact," can consider the holders of this two-sevenths share as both complainants and defendants. It is, in effect, a bill against themselves, to enforce a trust in their own favor on their own land. But the court can see that they, having had the legal title for over fifty years, and possession, so far as appears, for an equal length of time, are protected by the statute of limitations from their own suit. To give to complainants the benefit of the statute of limitations against their own claim is a "new thing under the sun," but so is the suit itself.

The law is well settled that when a will directs the sale of property for the benefit of certain persons to whom the legal title descends, those persons may elect 'whether they will take the property or the proceeds. *Pulteney* v. *Earl of Darlington*, 1 Bro. C. C. 223 ; *Cookson* v. *Cookson*, 12 Cl. & Fin. 121. This cannot, of course, be done unless all the beneficiaries consent, for any one of them has the right to insist upon an execution of the will. But this bill shows that by an order of court the shares of two of the children were set apart to them, and the shares of the others left in common. This could not have been done except by con-

sent, and that consent necessarily extinguished the power, for the power could not be divided. There is, therefore, by necessary legal intendment from the facts stated in the bill, no power to be executed.

Lastly, if all these objections were out of the way, and this bill were *recenti facto*, the objection that the trusts were purely discretionary, and could not be executed after the executor renounced, applies equally to this branch of the case as to the other.

The bill must be dismissed with costs.

NOTE. — Affirmed on appeal.