JACOB LAMPERT, Respondent, v. F. L. HAYDEL, Appellant.

St. Louis Court of Appeals, February 9, 1886.

1. EQUITY—TRUSTEES—PRACTICE.—In a proceeding by a beneficiary for a periodical accounting between him and the trustee, the decree should determine the rights of the parties as they existed at the date of the institution of the suit.

2. ——— USES AND TRUSTS—ACCOUNTING.—Courts of equity will uphold a devisor's clearly expressed intention to deprive the beneficiary of the power of alienation of property devised in trust for his benefit for life, and the beneficiary's grantee of the use can not maintain a bill in equity against the trustee for an accounting.

APPEAL from the St. Louis Circuit Court.

*Transferred to the Supreme Court.*

J. K. HANSBROUGH, for the appellant : Under the will, Junius Jacobs could not dispose of his interest in the rents and profits, in advance of their being paid over to him by the trustee; and his assignment of the same is void. *Dougal v. Fryer*, 3 Mo. 40 ; *Clamorgan v. Lane*, 9 Mo. 447 ; *Langdon v. Ingram's Guardian*, 28 Ind. 360 ; *Stewart v. Brady*, 3 Bush. 623 ; 1 Wash. Real Prop. (4 Ed.) *54, sec. 45, *et seq. ; Blackstone Bank v. Davis*, 21 Pick. 42 ; *Montague v. Crane*, 12 Mo. App. 582 ; *Nichols v. Eaton*, 91 U. S. 716 (bk. 23, L. Ed. 254) ; *Hyde v. Woods*, 94 U. S. 523 (bk. 24, L. Ed. 264) ; *Spindle v. Shreve*, 9 Biss. 199 ; *Broadway Nat. Bank v. Adams*, 133 Mass. 170 ; *Pacific Nat. Bank v. Windram*, 133 Mass. 175 ; *Thackara v. Mintzer*, 100 Pa. 151 ; *Swaby's App.*, S. Ct. Pa. 18 Rep. 350 ; *Stieb v. Whitehead*, 111 Ill. 247 ; *Leavitt v. Beirne*, 21 Conn. 1 ; *Nickell v. Handley*, 10 Gratt. 336 ; *Pope's Ex'r v. Elliott*, 8 B. Mon. 56 ; *White v. White*, 30 Vt. 338 ; *Campbell v. Foster*, 35 N. Y. 361. The defendant was

entitled, under the facts in this case, to an allowance out of the trust funds sufficient to cover his reasonable and necessary expenses incurred in defending this suit, and having the will construed. Whit. Pr. Mo. 576, sect. 451; 2 Perry, Tr., sects. 891, 894, 899, 902, ch. 30 (3 Ed.); Hill, Tr. Am. *notes,* *552, *555, *557; 1 Redf. on Wills (Ed. 1876) *493, sect. 4; *Rogers v. Ross,* 4 Johns. Ch. 608; *Bliss v. American Bible Society,* 2 Allen 334; *Drew v. Wakefield,* 54 Me. 291; *Matter of Turner,* 48 Mich. 369; *Dodge v. Williams,* 46 Wis. 70; *Will of John Meuerer,* 44 Wis. 392.

C. P. & J. D. JOHNSON, for the respondent: The testator did not limit the equitable life estate created by the will, in a way to prevent Junius Jacobs, one of the devisees and plaintiff's grantors, from disposing of his interest therein. *Brandon v. Robinson,* 18 Ves. 433; *Rochford v. Hockwan,* 10 Eng. L. & E. 64. See, also, *Graves v. Dolphin,* 1 Sim. 66; *Lear v. Leggett,* 2 Sim. 479; *Shee v. Hale,* 13 Ves. 404; *Piercy v. Roberts,* 1 Milne & K. 4. At law, any property, real or personal, that a man owns may be alienated by him, or may, unless specially exempted by statute, be taken for the payment of his debts; and no form of grant or devise can enable the grantee or devisee to hold the estate without its being subject to alienation, attachment, or execution. *Sparhawk v. Cloon,* 125 Mass. 266; *Blackstone Bank v. Davis,* 21 Pick. 43; *Tillinghast v. Bradford,* 5 R. I. 205; *Dick v. Pitchford,* 1 Dev. & B. Eq. 480.

ROMBAUER, J., delivered the opinion of the court.

The last will of George R. Jacobs, deceased, contained the following devise: "I give and devise the next, or middle lot, and the store house thereon * * * to the said John Byrne, Jr., and F. L. Haydel, of St. Louis county, in trust, and for no other purpose, for the use and benefit of my three sons, Wm. H., Charles A., and Junius, in equal shares, as long as they may all live, with power in my said three sons to use and enjoy

·equally the rents, issues, and profits thereof during their natural lives. When all three of my said sons have died, it shall be the duty of said trustees or their successors in office, to convey this lot and the store house thereon, in fee simple to the descendants or heirs at law of Wm. H., Charles A., and Junius, in equal portions, *per stirpes*. As long as any of my three sons, just named, survive, the said trustee shall hold said property in trust for the use and benefit of the survivor or survivors, and the descendants or heirs at law of the deceased. * * * My object in making the foregoing disposition of my St. Louis property, and in attaching the limitations aforesaid, is to secure to my children a certain annual income beyond the accident of fortune and bad management on their part, and with this end in view, to take away from them the power of disposing of the same, or of creating any liens thereon, or of making the same liable in any way for their debts."

John Byrne, Jr., declining to act, the defendant took charge of the property, under the will, in 1878. In April, 1885, the beneficiary, Junius Jacobs, for an expressed consideration of five thousand dollars, conveyed by deed to the plaintiff "all the income, rents, issues, and profits now due to me, and hereafter to become due to me in any manner, arising from, and accrued and to accrue from the property" described in the will.

The trustee refused to recognize the validity of this conveyance as affecting the rents to accrue, whereupon the plaintiff filed his bill in equity against him for an accounting. The defendant answering states that at the date of the conveyance from Junius Jacobs to the plaintiff, he had no money in his hands due to the said Junius Jacobs. He further answering prayed the court to construe the provisions of the will as far as they related to the rents, issues, and profits of the real estate, and to make a decree for the guidance of the trustee.

Upon the trial, it appeared that the trustee had in his hands $163.96 belonging to Junius Jacobs, of which amount $71.25 was collected since the institution of the

suit, and the whole amount, presumably, since the date of the conveyance from Junius Jacobs to the plaintiff. The court made a decree allowing the trustee thirty dollars for answering, and ordering him to pay the residue of $133.96 to the plaintiff.

The decree thus rendered can be upheld only by conceding two propositions: first, that in a proceeding for periodical accounting, the state of the account at the date of the trial, and not at the date of the institution of the suit, determines the right of the parties; and, next, that the limitations contained in the will were void as being in restraint of alienation.

On the first point, the true rule appears to be that where the action is one for final accounting, the court should have the account finally and fully stated up to the day of trial, in order that the decree may finally adjust the respective rights of the parties, and avoid the necessity of re-opening the account. Where, however, the relations between the trustee and the beneficiary are such that the rights of neither can be fully determined by the decree, and the bill seeks merely a periodical account, then the decree should determine the rights of the parties only as they were at the date of the institution of the suit. There is nothing in the latter case which takes it out of the common rule that the judgment or decree must be based upon the rights of the litigants, determined by conditions existing at the date of the institution of the suit. *Farrell v. Fritschle*, 30 Mo. 190.

We mention this because the question arises upon the record, and, although not of primary importance, will necessarily have to be met on a final disposition of the cause. Our judgment, however, is based upon a broader ground, and on one that goes to the foundation of the whole proceeding.

The trial court, assuming that Junius Jacobs had a life estate in the equitable right that had been devised to him, applied the doctrine that one of the necessary legal incidents to a life estate is the right of alienation,

and hence the limitation in the will against the power of transfer by the devisee was void.

We had this question before us at the present term in a controversy arising between the beneficiary's creditors and the trustee, in *Pickens v. Dorris* (*ante*, p. 1). We upheld the creditors' right there, on the sole ground that the will expressed no intention of the testator to withdraw the property devised from the claims of the beneficiary's creditors; but we also intimated what our decision would be if the expressed intentions of the testator on that subject were clear.

Here the intention of the testator admits of no doubt. It is expressed in clear and unambiguous terms. The question for us is: shall we give effect to that intention, or shall we frustrate it, because it is opposed to a rule of law never fully recognized in this country, and recently repeatedly repudiated by courts of the highest dignity and learning, as a rule opposed to the dictates of reason and conscience alike?

It is said in *Brandon v. Robinson* (18 Ves. 433), that a donor creating a life estate could not take away its incidents, among which are the power of voluntary and involuntary alienation. That is the settled rule in England. Yet it is conceded even there that if the gift or devise contain a condition of cesser upon bankruptcy of the donee or devisee, or upon an attempted alienation, or if the estate created is a mere use at the discretion of the trustee, the restraint is valid.

What sound public policy can there be which upholds the restraint in one case and avoids it in the other? Upon what ground can the law tolerate conditional fees or freeholds, where the violation of the condition determines the estate, and yet refuse to uphold them when a violation of the condition is not fraught with such dire result? What folly to say that one may annex conditions to his gift, which destroy it, but not such as simply regulate it! It is such artificial reasoning, founded on no sound principle, that has brought upon the law the merited distrust of intelligent laymen.

The highest tribunal in the land, distinguished for the learning of its members, has condemned the rule as stated in *Brandon v. Robinson*. In a characteristically able opinion delivered on behalf of the entire court, by Judge Miller, in *Nichols v. Eaton* (91 U. S. 716 [bk. 23, L. Ed. 254]), that court held that the power of alienation is not a necessary incident to a life estate. "Nor do we see," say the court, "any reason in the recognized nature and tenure of property, and its transfer by will, why a testator who gives, who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift, during the life of the donee. Why a parent, or one who loves another and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence or incapacity for self-protection, should not be permitted to do so is not readily perceived."

This doctrine was reaffirmed in *Hyde v. Woods* (94 U. S. 523 [bk. 24 L. Ed. 264]). The supreme court of the United States is, therefore, fully committed on that side of the question. That court, in its relations to us, is not a foreign tribunal. Its opinion is of more than mere persuasive authority, and the argument advanced by the court is so clear and convincing that we would be inclined to yield to it, even if the case stood alone and unsupported.

Such, however, is not the case. We believe that the weight of authority in this country is with the supreme court of the United States, as the weight of reason unquestionably is. Such has always been the rule in Pennsylvania (*Fisher v. Taylor*, 2 Rawle 33 ; *Thackara v. Mintzer*, 100 Pa. 151), and has been recognized as the true rule, in regard to trust estates at least, in a number of other states (*Broadway Nat. Bank v. Adams*, 133 Mass. 170 ; *Stieb v. Whitehead*, 111 Ill. 247 ; *Nickell v. Handly*, 10 Gratt. 336 ; *Pope's Ex'r v. Elliott*, 8 B.

Mon. 56); while in others it has been recognized by statute. *Campbell v. Foster*, 35 N. Y. 361; *Hardenburgh v. Blair*, 30 N. J. Eq. 645, 661.

In this state the question, so far as it affects trust estates, has never been expressly adjudicated. The cases of *Dougal v. Fryer* (3 Mo. 40), and *Clamorgan v. Lane* (9 Mo. 447), which are relied on by the appellant, furnish no authority either way, as they were determined by the fact that the terms of the conveyance under consideration were valid under the Spanish law, which was in force when they were executed.

Nor is the case of *McDowell v. Brown* (21 Mo. 57, 59), which is relied on by the respondent, in point. In that case the conveyance under consideration affected a legal estate. The court *arguendo* intimates that the condition in restraint of alienation was void, but places its conclusions equally upon the more substantial ground that the construction adopted by the court executes the intention of the grantor nearer than any other interpretation.

Whatever may be the prevailing rule in England, it is undeniable that a difference between legal and equitable estates in that regard is recognized in this country. The distinction is clearly drawn both in *Sparhawk v. Cloon* (125 Mass. 266), and *Broadway National Bank v. Adams*, *supra*. For that reason, among others, I am of opinion that the case of *McDowell v. Brown* furnishes no insurmountable obstacle to upholding the trust in the present case, in accord with the clear and unmistakable intention of the testator.

I am of opinion that the decree of the trial court herein should be reversed, and a decree for the defendant entered in this court. In this opinion Thompson, J., concurs.

In the opinion of Lewis, P. J., however, this decision is opposed to the previous decision of the supreme court, in the case last named.

It is, therefore, ordered that the cause be certified to the supreme court, in conformity with the provisions of

section six of the constitutional amendment concerning the judicial department. In this order all the judges concur.

LEWIS, P. J., DISSENTING.

I find nothing in the general reasoning of my learned associates from which I can withhold my concurrence, but for reasons which will hereafter appear, I feel compelled to dissent from their conclusion.

The circuit court, assuming that Junius Jacobs had a life estate in the equitable rights that had been devised to him, applied the doctrine that one of the necessary legal incidents to a life estate is the right of alienation; that the policy of the law forbids restraints upon alienation, and hence the limitations in the will against the power of transfer by the devisee were void. This is, substantially, the settled English doctrine. *Brandon v. Robinson*, 18 Ves. 433.

The rule is alike applicable to estates for life and estates in fee. It is held, however, that if the conveyance provides for a cesser of the estate granted, or a limitation over to another person upon the happening of a particular event, as bankruptcy, attempt to alienate, etc., full effect will be given to the cesser or limitation. Said Lord Eldon, in the case just cited: "There is no doubt that property may be given to a man until he shall become a bankrupt. It is equally clear, generally speaking, that if property is given to a man for his life, the donor can not take away the incidents to a life estate; and, as I have observed, a disposition to a man until he shall become bankrupt, and after his bankruptcy over, is quite different from an attempt to give to him for his life, with the proviso that he shall not sell or alien it. If that condition is so expressed as to amount to a limitation reducing the interest short of a life estate, neither the man nor his assigns can have it beyond the period limited." We have thus two distinct classes of cases: (1) Where the conveyance for life or in fee prohibits alienation in general or specific terms, but creates no

cesser or limitation over, in enforcement of the prohibition. In this class, the prohibition will be held void, and the whole estate will become vested, with all its legal incidents, including the right of alienation. (2) Where a cesser of the rights conveyed, a limitation over, or a reversion, is to take effect upon the happening of the event stipulated against. In this class, there is no complete grant of either fee or life estate, but only of an interest, which is determinable under expressed conditions.

There is a series of very high American authorities which seem to ignore the distinction just noted, in its relation to cases where there is an absolute gift by the grantor, through a trustee who is to hold the legal title, of income and profits to a beneficiary, with a proviso that he may not anticipate or alienate them, and that they shall never in any manner become liable for his debts. In *Nichols v. Eaton* (91 U. S. 716), the will provided for a cesser and limitation over, in case the beneficiaries should "alienate or dispose of the income to which they were entitled under the trusts of the will ; or if, by reason of bankruptcy or insolvency, or any other means whatsoever, said income could no longer be personally enjoyed by them respectively." The specific effects of the cesser and limitation over, as above defined, were strongly urged in the argument. But in the characteristically able and thorough opinion by Miller, J., and in a large array of authorities from which he quotes at length, a recognition of this condition, as essential to the conclusion reached, seems to be carefully avoided. The operative efficacy of the restraint upon alienation, voluntary or otherwise, is placed upon broad and general grounds which demand no aid from any provision for cesser or limitation over.

Two cases have been decided by this court, whose leading features were nearly parallel with those of the present case, though neither depended for its determination on the question just referred to. *Montague v. Crane* (12 Mo. App. 582), was a case of cesser and limi-

tation over. Full effect was given to the restraint upon alienation. In *Pickens v. Dorris* (*ante*, p. 1), there was no provision in the will for cesser or limitation over. The income bequeathed to the beneficiary was held subject to the demand of his creditor. So that, in either case, our conclusion harmonized practically with the English rule, although not distinctly placed on that ground. In the *Pickens Case*, it was apparent that nothing contained in the will was effectual, or even intended to shield the interest devised from creditors of the devisee. It was shown in the same case that, notwithstanding the broad, satisfactory, and comprehensive views announced in *Nichols v. Eaton*, and the authorities there cited, a wide diversity of opinion existed among the American courts upon the adoption of the English rule. As to our supreme court, its expressions on this question are meager. But they are sufficiently well defined to constitute, in my view, "the last previous rulings" of that tribunal, so as to make them, within the terms of the constitution, "controlling authority in said courts of appeals." Sect. 6, Constitutional Amendment, Session Acts, 1883, p. 216.

In *McDowell v. Brown* (21 Mo. 57), the English rule is fully recognized in its application to a conveyance in fee. Said Judge Leonard: "The intention of this grantor may have been, and probably was, to vest the whole property, the absolute dominion over the lot, in her daughter, with all the rights and incidents of an ownership in fee simple, stripped only of such power of alienation on the part of the daughter as would prevent its descent at her own death, upon her own children, the grantor's grandchildren. Such an intention, however, is inconsistent with the rules of law, and for that reason can not prevail, no matter how obvious it may be."

In *McIlvaine v. Smith* (42 Mo. 45), Judge Holmes, after quoting a remark from Lord Eldon, adds: "Nor,

when the property is actually given to a man in this manner for life, can the donor take away the incidents of a life estate, nor annex restrictions that shall deprive him of all power of alienation, though he may reduce the interest to an estate short of a life estate by a limitation over."

In the present case, the will contains no provision for a cesser of the estate, or a limitation over. Hence, I deem the decision of my learned associates on this question contrary to the foregoing decisions of the supreme court. I make no objection to other points in the majority opinion.