Wiggins *v.* Wiggins.

## Lucy A. Wiggins

*v.*

## William Wiggins.

[Submitted October 17th, 1903.   Decided November 2, 1903.
Filed January 20th, 1904.]

1. The fundamental rule in the construction of wills is the ascertainment of the intention of the testator—*first*, by carefully considering the force of every word of the language used by him, and *second*, in case of difficulty and ambiguity, by considering therewith his pecuniary circumstances and his family and social relations.

2. Since, in the absence of anything to the contrary in a will, the personal estate should be first applied to the payment of debts, the burden is on the legatee of the personalty to show from the will or the circumstances of testator's estate that the personalty should not pay either the whole or any part of the debts.

3. A will provided—*"First.* After all my lawful debts are paid, I give and bequeath to my son all my real estate; * * * *second,* I give * * * to my wife all my personal property of any and all kinds of which I may die seized."—*Held,* that testator's intention was that the debts should be paid by the son.

4. Where a testator devised all his personalty to his wife and his realty to his son, after payment of his debts, and the only substantial debt was the balance due on a mortgage, held by the son, on the land devised to him, such debt should be paid by him.

5. Where a bequest of personalty to testator's wife is in lieu of dower, and is so accepted by her, she is a legatee for value, and the devisee of mortgaged realty cannot call on her to contribute to the payment of the mortgage, especially where, if she were forced so to contribute, she would lose not only her dower, but all that she received under the will.

6. An executor is personally chargeable with costs of litigation instituted against him by a legatee to establish her fund free from the testator's debts, where his resistance is not justified by any ambiguity in the will, and he is the only other beneficiary.

---

On final hearing on bill and answer.

The complainant, Lucy A. Wiggins, is the widow and the defendant, William Wiggins, is the son of Uel H. Wiggins, de-

ceased, who died October 29th, 1902, testate of a will, presently to be stated, and seized of about six hundred acres of land in Morris county and two town lots in the village of Warwick, Orange county, New York.

The lands in Morris county were subject to a balance of $1,000, with alleged arrears of interest, due on a bond and mortgage for $3,000, given by testator in his lifetime and which had been assigned to and held by his son, William Wiggins. He was also possessed of personal property, principally money in bank, amounting to $2,377.78.

On the 17th of December, 1900, he made a will, the material parts of which are as follows:

"*First.* After all my lawful debts are paid, I give and bequeath to my son William Wiggins all my real estate whatever the same may be and wherever situated; to him and his heirs forever.

"*Second.* I give, devise and bequeath unto my beloved wife, Lucy A. Wiggins, all my personal property of any and all kinds of which I may die seized to have hold use and dispose of as she shall *chose* and if any part of the same shall remain at her death, I then direct that the part or balance be it more or less shall go to my son William Wiggins.

"*Third.* The above bequest to my wife Lucy A. Wiggins is hereby made and to be accepted in *leue* of her dower in my said real estate.

"*Lastly.* And I hereby nominate constitute and appoint my beloved son William my executor of this my last will and testament."

The defendant proved the will, filed an inventory and advertised for claims against the estate; the result showing the following items:

| | |
|---|---|
| Premiums on fire insurance, due prior to the death of testator ......:........................ | $26 64 |
| J. L. Spencer, book account.......:............ | 26 33 |
| Taxes on real estate, due prior to the death of the testator and subject to interest at twelve per cent. and costs if not·paid.................. | 82 07 |

The defendant, by his answer herein, claims also to be a creditor for the balance of $1,000 besides interest for seventeen years due on the bond and mortgage held by him.

The complainant demanded from the defendant all the personal property, which the defendant refused to give her, claiming, both before she filed her bill and in his answer thereto, that the same was liable to be applied to the payment of the debts of the testator, including the bond and mortgage, besides costs of the administration of his estate.

The object of the bill is to establish the right of complainant to the fund free of the debts and subject to the costs of administration.

*Mr. Benjamin W. Ellicott,* for the complainant.

*Mr. George Biller,* for the defendant.

Pitney, V. C.

The well-established fundamental rule in construing wills is to ascertain the intention of the testator—*first,* by carefully considering the force of every word of the language he has used, and *second,* in cases of difficulty or ambiguity, by considering therewith his pecuniary circumstances and his family and social relations.

The great number of wills, which, in bygone years, have been the subject of judicial construction, are so variant in their language that it has been found that little assistance is derived from the recorded judicial results, except where certain words and phrases have acquired by long use and judicial construction a certain definite meaning.

The use of such words in a modern will have led the court sometimes to give them the force due to precedent in cases where individual judges have doubted whether such deference to authority has not resulted in contravening the testator's actual intention.

In other cases judges have frankly admitted that they were unable to ascertain the real intention of the testator and have fallen back on certain so-called general rules of construction to aid in their determination. Such a case is *In re Ovey, Broadbent* v. *Barrow,* reported in *L. R. 20 Ch. Div. (1882) 676,* and again on appeal to the house of lords. *L. R. 8 App. Cas. 812.*

In the present case we have a testator possessed of considerable real estate and a considerable personalty, substantially free from indebtedness except a mortgage on his land for a sum quite trifling in comparison with its probable present value.

We have him first giving all his real estate to his son, and, second, all his personalty to his wife. The language of the bequest to his wife is peculiar. It is: "All my personal property of any and all kinds of which I may die seized," &c.

Here is a plain intention to give all his landed property to his son and all his personal property of which he may die seized or possessed to his wife.

Nothing would seem plainer than this. The two classes of property so given to two several beneficiaries are easily distinguished and perfectly well defined. There is no room for confusion or doubt. The testator's will is clear. His intention that his wife should have one class of property is just as clear and unequivocal as that his son should have the other. Both stand on the same footing.

The gift to complainant cannot, perhaps, be classed strictly as a specific legacy since it has not the quality of giving a particular specified part of a whole, as a certain horse, or a sum of money described as on deposit in a certain bank, or the like—being a part of the whole personal estate.

But, in my opinion, it has all the qualities of a specific legacy in that while it does not give a specific part of the whole, it gives by express terms the whole, which includes every part. It is distinguished from what is called a general legacy in that it is not the gift of a particular sum of money which the testator may have supposed could be raised by a sale of his personal assets.

So if it were necessary, for the solution of this case, to hold that the gift is a specific legacy, I should be ready to do so. But, by the law of the land, all of testator's property, both personal and real, was subject to the payment of his debts—the personalty first.

The existence of debts raises the question in the case. It is to be here observed that the will is not prefaced by the usual formal declaration or direction for the payment of all his just

debts and funeral expenses, nor is there any devise or bequest of any residue. Nor, indeed, is there any occasion for any.

Now, as I have said, by the law of the land, the personal estate, in the absence of anything to the contrary in the will, should be first applied to the payment of his debts; hence the burden is on the complainant, the legatee of the personalty, to point out something in the will, or in the circumstances of the testator's estate, or both, to show that the personalty should not pay either the whole or any part of the debts.

The complainant relies on three matters:

First, what she alleges is a condition annexed to the devise of the land, viz., the words, *"after all my just debts are paid."* She argues that those words show clear intention of the testator that the debts should be paid by the son, to whom the land was devised.

It seems to me that the argument is sound and unanswerable and the result such as would be adopted by any intelligent person not learned in the law and not familiar with the reluctance with which our English ancestors gave up, little by little, the immunity from debts with which land by the feudal law was invested.

It·seems to me clear enough that the testator meant that the debts should be paid by the person to whom the land was given. That is the natural construction of the sentence.

In the second place, she points out the fact that substantially the only debt owing by the testator at his decease was the balance due on his mortgage, held by his son, on the very lands devised to that son.

The history of judicial action shows that there was for a long time, and still is, a strong feeling among equity judges against the old rule which entitled the heir or devisee of land to claim the right to have any mortgages, which may have been placed thereon by the ancestor or devisor, discharged out of the personalty. And so strong was that feeling that in England, many years ago, it was abolished by parliament. See *3 Jarm. Wills (R. & T. ed.) 485; 2 Jarm. Wills (4th London ed.) 646.* Some of the states of the union have done the same.

So strong is this natural equity that the courts have made

many exceptions to the old rule. Thus it was held by lord chancellor Lord Loughborough, afterwards Earl of Rosslyn, in *Hamilton* v. *Worley, 2 Ves. Jr. 62,* that as between an heir-at-law and a general legatee the heir does not have an equity to have a lien on land discharged out of the personality. At *p. 65* he uses this language:

"The foundation of it is the equity the court affords to a person entitled to real estate by devise to have the encumbrances upon it discharged as a debt out of the personal estate. That can go no farther than this: as between the heir or devisee of the estate and the residuary legatee, it cannot interfere with the disposition of other parts, as specific or general legacies, much less with the interests of creditors." And see *3 Wms. Ex. (7th Am. ed., R. & T.) 149; 3 Wms. Ex. (9th Eng. ed.) 1563.*

And in this connection see *Thomas* v. *Thomas, 2 C. E. Gr. 356,* decided by Chief-Justice Beasley, sitting as a master. The points decided were these:

"1. When a decedent leaves a debt due by specialty and the residuary fund has been exhausted, there being neither lands descended nor lands charged with debts, the general rule is that the specific legacies and the land devised must contribute ratably to discharge such debt.

"2. But in case the decedent has secured such debt by way of mortgage on any part of the land devised, after the exhaustion of the general residuary fund, the devisee of the mortgaged land cannot call for contribution either on the general or specific legatees."

At *p. 358,* in distinguishing between the case in hand and that of *Shreve* v. *Shreve, 2 C. E. Gr. 487,* the learned chief-justice says:

"But the distinction is between the mere general right of the holder of a specialty debt to levy it at his pleasure on the real or personal estate, and the lien growing out of such debt imposed by the testator himself upon the land. In such event the doctrine has been long established that, after the application of the general residue of the estate, the land thus encumbered must solely bear the burden. By force of such a testamentary disposi-

Wiggins *v.* Wiggins.

tion the devisee of the encumbered land cannot disappoint either the specific or general legatees.

"The early decisions in which this rule is propounded and applied are those of *Lutkins* v. *Leigh, Cas. t. Talb. 53,* and *Forrester* v. *Leigh, Amb. 171.* And in more modern times the rule has often been received as of unquestionable obligation both by text-writers and in judicial opinions. *2 Rop. Leg 957; 2 Wms. Ex. 1453; 2 Jarm. Wills 428,* and the cases cited."

The cases referred to by the learned chief-justice and others are collected by Mr. Roper in the second volume of his work on *Legacies p. 957 et seq.*

The author (at *p. 959*) states the rule to be:

"That, although the natural fund for the payment of debts is the personal estate, and the heir or devisee of the real is in general entitled to have the personal estate applied in exoneration of encumbrances affecting the former, yet the court of chancery will not permit such arrangement to take place when it would defeat legatees of their legacies."

And see the case of *Rider* v. *Wager, 2 P. Wms. 329* (at *p. 335*), where the lord chancellor held:

"It was contended that this mortgage, being a debt, must be paid out of the personal estate, nay that it should be paid out of the personal estate prior to the specific legacies, at least before the pecuniary legacies. \* \* \* However, it was afterwards admitted by counsel on both sides that the land being made by the testator himself a fund for the payment of the mortgage-money, though the same should be eased against an administrator or residuary legatee, yet it should not be eased so as to disappoint any of the debts or even legacies given by the will, either specific or pecuniary."

And in *Tipping* v. *Tipping, 1 P. Wms. 729* (at *p. 730*), we find the following:

"So the lord chancellor denied it to be a rule that in all cases the personal is applicable in case of the real estate, for it shall not be applied if thereby the payment of any legacy will be prevented, much less where it will deprive the widow of her *bona paraphernalia.*"

Wiggins *v.* Wiggins.

And in *Oneal* v. *Mead, 1 P. Wms. 694,* we have a case almost on all fours with the present.

"One seized of a real estate in fee, which he had mortgaged for £500, and was possessed of a leasehold, devised the former to his eldest son in fee and gave the latter to his wife, and died, leaving unsecured debts which would exhaust all his personal estate except the leasehold given to his wife.

"The question was whether there being (as usual) a covenant to pay the mortgage-moneys, the leasehold premises devised to the wife should be liable to discharge the mortgage?"

It was argued that the mortgage debt should be discharged out of the leasehold, which was personalty.

"But the master of the rolls, after taking time to consider of it and being attended with precedents, decreed that as the testator had charged his real estate by this mortgage and, on the other hand, specifically bequeathed the leasehold to his wife, the heir should not disappoint her legacy by laying the mortgage debt upon it, as he might have done had it not been specifically devised; and though the mortgaged premises were also specifically given to the heir, yet he, to whom they were thus devised, must take them *cum onere,* as probably they were intended. That by such construction each devise would take effect (viz.) the leasehold estate go to the devisee thereof and the heir enjoy the freehold, though subject to the burden with which the testator in his lifetime had charged it."

And in *Davis* v. *Gardiner, 2 P. Wms. 187,* it is said by the reporter (at *p. 190*):

"So if the testator had owed a debt for which his real and leasehold estates were mortgaged, equity would in this case have charged all this debt on the real estate in order to have enlarged the fund for the payment of the legacies as well as debts."

The complainant might well rest her case on this point alone; but there still remains her third point, which is that the bequest to her in this case is in lieu of her dower in the real estate.

It sufficiently appears by the pleading and the time which has elapsed between the probate of the will and the filing of the bill that the widow has not filed her dissent. The claim found in the bill is a distinct assent. This places her in the commanding

position of a legatee for value, and, as between her and the other beneficiaries, gives her immunity from liability to contribute toward the payment of debts.

It was so distinctly held by Chancellor Runyon in *Howard* v. *Francis, 3 Stew. Eq. 444* (at *p. 447*), and it is sustained by the authorities he cites, viz., *1 Rop. Leg. 431,* and the cases there cited, viz., *Burridge* v. *Bradyl, 1 P. Wms. 127; Blower* v. *Morrel, 2 Ves. Sr. 420; Heath* v. *Dendy, 1 Russ. 543.*

In accord with these decisions are *Williamson* v. *Williamson, 6 Paige 298; Borden* v. *Jenks, 140 Mass. 562,* and *Lord* v. *Lord, 23 Conn. 327.*

This result is in strict accord with the demands of justice and equity.

It is especially true in the present case; for, if the defendant's contention prevails, the widow will receive nothing under the will and the intention of the testator in that behalf will be frustrated entirely, and, in addition, the widow will lose, by her acquiescence in the will, her right of dower in a valuable real estate.

I cannot help but remark on the improbability of the testator realizing that his son was holding for sixteen or seventeen years a mortgage for one thousand dollars on his lands, on which mortgage interest had been accumulating all the time, while, at and before the time of his death, testator had money in bank sufficient to discharge it.

There will be a decree establishing the complainant's right to all the personal property with its accumulations from the time of the death of the testator, subject only to the payment of the costs of administration and a share of the funeral expenses, which share shall be in the proportion which the personal bears to the real property in value.

I have not considered the question, indeed, it has not been raised in the pleadings, or argued, whether, under the language of the will, the complainant's estate in this personalty is absolute or simply a life estate with a power of disposition.

Some of the authorities on this subject will be found collected in *Cox* v. *Wills, 4 Dick. Ch. Rep. 135,* and in *Bryan* y. *Bryan. 16 Dick. Ch. Rep. 45.*

I will hear counsel on that topic if they desire.

I think the decree should be in favor of the complainant, with costs, against the defendant personally.

It is substantially a contest between two individuals. I think there is no such doubt upon the construction of the will as justified the defendant in resisting, as he has done, the claims of the complainant.

He cannot claim to occupy the position of a disinterested executor, asking the protection of the court in the administration of an estate, that is, he is not helped by the fact that he is named as executor.

I also think the complainant is entitled to a counsel fee if she asks it.