WILLIAM W. WALKER, et al., plaintiffs in error, vs. MOSES WALKER, et al., ex'ors, &c., defendants in error.

MOSES WALKER, et al., ex'ors., &c., plaintiffs in esror, vs. WILLIAM W. WALKER, et al., defendants in error.

[1.] F. J. Walker, by the 2d item of his will, directed his executors to send to the Colony in Liberia, in Africa, at the expense of his estate, certain slaves therein named. By the 4th item of the will, the executors were authorized, without any order from any Court, to sell at public or private sale, for cash or on credit, in their discretion, any and all of testator's property, real and personal, and any or all of his slaves, except those specially directed to be colonized, in order to carry out testator's wishes. And by the 5th item of the will, the entire proceeds of the estate is to be invested in such manner as the executors may see fit, and transferred to the American Colonization Society, to be held by them in trust for the maintenance and support of the seven slaves specified and their descendants.

*Held,* that the trust created by this will in favor of the slaves to be colonized in Africa, was valid; but one which could not be executed by the American Colonization Society under their charter.

[2.] The trust being legal, and the *cestui que trusts* capable of taking, the Chancellor will appoint the executors, or some other fit and proper persons, to carry the trust into effect.

Caveat, from Burke county. Decided by Judge HOLT, April Term, 1858.

Ordered, by consent of counsel, that these two cases be consolidated and argued together.

Francis J. Walker departed this life in 1856, having made his last will and testament as follows :

*In the name of* GOD *amen :* I, *Francis J. Walker,* of the county of Burke and State of Georgia, being of feeble health, but of sound and disposing mind and memory, do make and publish this my *last will* and *testament,* revoking all others:

IMPRIMIS. I desire all my just debts and funeral expenses to be paid.

ITEM. I direct my executors hereinafter named, or their successors in the administration of my estate, to send to the

colony of Liberia, in Africa, at the expense of my estate, the following named slaves, belonging to me, viz: Louisa (mulatto) and her children, Green, William and Elizabeth ; Louisa (light negro) and her children, Catharine and Augustus, Sue and her son Harry ; and Cecilia and her daughter Emily.

ITEM. I authorize my executors, in their discretion, to send to Liberia aforesaid, any and all my slaves not above named, which authority I expect them to exercise or not, as they may or may not ascertain the balance of my estate to be sufficient for the provision hereinafter made for the children above named.

ITEM. I authorize my executors, without any order from any Court, to sell at public or private sale, for cash or on credit, in their discretion, any and all my property, real and personal, and any and all of my slaves, except those specially named above, which they may think it best to sell, in order to carry out my wishes in this will expressed.

ITEM. I direct my executors or their successors in administration, to invest the entire proceeds of my estate, after the payment of my debts and the expenses herein before provided for, in such manner as they may deem most advantageous; and to transfer the whole of it to the *American Colonization Society*, to be held by them in trust for the maintenance and support of the children named in the second clause above, to-wit: Green, William, Elizabeth, Catharine, Augustus, Harry and Emily, and their descendants.

FINALLY. I appoint my brother *Moses Walker* and my friend *Edward B. Gresham*, executors of this my last will and testament.

In *wi'ness whereof* I have hereunto set my hand and seal this sixteenth day of May, eighteen hundred and fifty-six.

Signed, sealed, published and declared by Francis J. Walker as his last will and testament.

F. J. WALKER    [SEAL.]

In presence of W. J. JONES, SAM'L. B. CLARK, E. T. MURPHY.

This will was admitted to proof in solemn form, and the executors qualified.

William W. Walker gave notice to the executors that at the March term, 1857, of the Court of Ordinary, they would be required to prove the will in solemn form, and at the said term the said William W. Walker entered his caveat against the proof of the said will on the following grounds:

(The 1st, 2d, 3d and 4th grounds having been withdrawn, are omitted.)

5th. For that also, the paper presented, as the will of the said Francis J. Walker, is not the will of the deceased, and is not as such entitled to probate.

1st. Because it is in violation of the statutes against the manumission of slaves; in that in and by said pretended will the said Francis J. Walker, both directly and indirectly, attempts to confer freedom on slaves.

2d. Because in and by said pretended will, the said Francis J. Walker attempts to invest the executors named with an illegal, discretionary authority, by which they might confer freedom on slaves.

3d. Because in and by said pretended will, the said Francis J. Walker, contrary to law and the policy of the law, attempted to give to the executors named a discretion and authority in the management of his estate above and uncontrollable by any legal authority.

4th. Because that in and by said pretended will, the said Frances J. Walker attempted to create a trust in a foreign corporation for the benefit of slaves.

And further objecting to said will, the caveators by this amendment to their caveat, say:

1st. That by the fourth and fifth clauses of said will, the testator has sought to create an estate in the American Colonization Society, as trustees for the benefit of the *cestui que trusts* named, which is illegal and invalid, and contrary to

the laws of this State, in this: That he has sought to create an estate in the nature of an estate tail in perpetuity, for the benefit of said *cestui que trusts*, and therefore said clauses are void and of no effect.

2d. By said clauses he has sought to create an estate in trust, first in his executors, and then in the Colonization Society, for the benefit of persons who are incapable of taking, by reason that they are slaves, and therefore these clauses are void.

3d. These clauses are void, because he has sought to create an estate in the American Colonization Society, as a trustee, which the said Society is incapable of taking, by reason that they are not authorized by their charter to receive such an estate ; a copy of which charter, or act of incorporation, by the Legislature of Maryland, being the only charter of said Company, is hereto annexed as a part of this caveat.

*"An Act of the Legislature of Maryland, passed March 22d, 1837, entitled 'An Act to incorporate the American Colonization Society.'*

" *Whereas,* by an Act of the General Assembly of Maryland, entitled " *An Act to incorporate the American Colonization Society,*" passed at December session, eighteen hundred and thirty-one, chapter one hundred and eighty-nine, the said Society was incorporated with certain powers : And whereas, it is represented to this General Assembly, that the rights and interests of said Society have been materially injured, and are likely to suffer further injury, by certain alleged omissions on the part of said Society, to give efficiency to said Act : Therefore,

" SECTION 1. *Be it enacted by the General Assembly of Maryland,* That John C. Herbert, Daniel Murray, Joseph Kent, Ezekiel F. Chambers, Daniel Jenifer, George C. Washington, Virgil Maxcy, Zaccheus Collins Lee, Alexander Randall, Francis S. Key, Walter Jones, Ralph R. Gurley and

William W. Seaton, of the Society called the American Society for Colonizing the free people of color of the United States, and their successors, together with such others elected and qualified, as the present or future Constitution, by-laws, ordinances or regulations of said Society, do or shall hereafter prescribe, shall be, and they are hereby created and declared to be a body politic and corporate, by the name, style and title of The American Colonization Society, and by that name shall have perpetual succession, and shall be able to sue and be sued, to plead and be impleaded, in any Court of law or Equity in this State, and may have and use a common seal, and the same may destroy, alter or renew at pleasure, and shall have power to purchase, have and enjoy, to them and their successors, in fee or otherwise, any lands, tenements, or hereditaments, by the gift, bargain, sale, devise, or other act of any person, or persons, body politic or corporate whatsoever; to take or receive any sum or sums of money goods or chattels that shall be given, sold or bequeathed to them in any manner whatsoever; to occupy, use and enjoy, or sell, transfer or otherwise dispose of, according to the by-laws and ordinances regulating the same, now or hereafter to be prescribed, all such lands, tenements or hereditaments, money, goods or chattels as they shall determine to be most conducive to the colonizing, with their own consent; in Africa, of the free people of color residing in the United States, and for no other uses or purposes whatsoever; and as soon after the passage of this Act as may be convenient, to elect such officers as they or a majority of them present may deem proper, and to make and ordain such Constitution, by-laws, ordinances and regulations as may be necessary for the organization of the said Society ; and to repeal, alter or amend the same ; to prescribe the times of meeting, the qualifications and terms of membership, and to do all such other acts and deeds as they shall deem necessary for regulating and managing the concerns of the said body corporate ; *Provided however,* that the Constitution and laws of this State and o

the United States, and this Act of Assembly be not violated thereby.

"Sec. 2. *And be it enacted,* That for the object aforesaid, all property, real, personal and mixed, whether in action or possession, and all rights, credits and demands, owned, held or claimed, before this Act, by the said Society, and all such property, rights, credits and demands, as, were it not for this Act, might hereafter be owned, held or claimed, by the said Society, shall vest and are hereby declared to vest in the said body corporate, and its successors, as fully and effectually as they have, or could have vested in the said society; and also that the said body corporate and its successors, are hereby declared to be as completely and effectually liable and responsible for all debts, demands and claims, due now or which would thereafter be due by the said Society, if this act of incorporation had not been granted, as the said Society is now, or would hereafter be so liable and responsible for.

"Sec. 3. *And be it enacted,* That the said body corporate, and its successors, shall forever be incapable of holding in fee or less estate, real property in the United States, the yearly value of which exceeds the sum of thirty thousand dollars, or the yearly value of so much thereof as may be in this State, exceeds the sum of five thousand dollars.

"Sec 4. *And be it enacted,* That the Act hereinbefore mentioned of the General Assembly of Maryland, chapter one hundred and eighty-nine of December session, eighteen hundred and thirty, be, and the same is hereby repealed: *Saving and reserving, however,* to the persons incorporated by said Act, and tothe American Colonization Society, all the rights and powers conferred by said Act, so far as the same may be necessary for the recovery, possession, holding or enjoyment of any property, real, personal or mixed, chose in action or franchise of any description whatsoever, which may have been heretofore given, granted, devised or bequeathed to, or otherwise acquired by, the said persons, or any of them, or to or by the American Colonization Society.

"Sec. 5. *And be it enacted*, That this Act, and the powers and privileges granted thereby, may be at any time repealed, modified, amended or changed, at the discretion of the General Assembly."

We acknowledge service of the aforegoing bill of exceptions, and that it contains a true statement of the case, sufficient for the action of the Supreme Court, and consent that it stand and be taken as well for a transcript for the record, as for the bill of exceptions, and that nothing more be required on the hearing in the Supreme Court.

This caveat was, by consent, appealed to the Court below, and a bill of equity filed, alleging that the 4th and 5th clauses of the will were illegal and invalid for other reasons than those contained in the caveat.

A demurrer was filed to the bill in equity by the executors.

After argument, the Court below made the following order:

"It is therefore ordered that the case be returned to the Court of Ordinary, with instructions to admit the will of Francis J. Walker to record, except the 3d, 4th and 5th clauses thereof, hereby declared to be null, and that an intestacy be declared as to all the property of the said Francis J. Walker, except such parts and so much thereof as are necessary to carry out the provisions contained in the 2d clause of said will. Let the propounders pay costs."

To this order counsel for the caveators excepted, saying that the Court erred:

1st. In deciding that the 2d clause of said will was valid.

2d. In holding that the word "descendants," creating an estate in perpetuity, would vest an absolute estate in the first taker, if capable of taking.

And counsel for propounders tendered their bill of exceptions, saying that the Court erred:

1st. In deciding that the 4th clause of the will is null.

2d. In deciding that the 5th clause of the said will is "null

by reason of the incapacity of the trustees and *cestui que trusts* to take and hold the property therein bequeathed."

3d. In ordering "that the case be returned to the Ordinary with instructions to admit the will of Francis J. Walker to record except the 3d, 4th and 5th clauses thereof, hereby declared to be null, and that an intestacy be declared as to all the property of the said Francis J. Walker, except such parts and so much thereof as are necessary to carry out the provisions contained in the 2d clause of the will." To all which, except so far as the order related to the 2d and 3d clauses, and so much and such parts of the property as were necessary to carry out the provisions contained in the 2d clause of the will, counsel for propounders excepted.

4th. In ordering that "the propounders pay cost."

SNEAD; and STARNES, for caveators.

JENKINS, JONES; and STURGES, for propounders in both cases.

*By the Court.*—LUMPKIN, J. delivering the opinion.

After argument and consideration, his Honor Judge Holt held, that the second clause in the will of F. J. Walker, providing for the extra-territorial emancipation of a part of the testator's slaves, was valid; and counsel for the caveators excepted. He further decided that the 4th and 5th clauses of the will were void, by reason of the legal incapacity of the trustee and *cestui que trust* to take and hold the property therein bequeathed. And to this ruling counsel for the executors excepted.

Counsel for the caveators having abandoned in open Court, their objections to the decision of the Court, upon the second item in the will, directing the executors to transport the slaves therein named, to Liberia, at the expense of testator's estate, it only remains to examine the 4th and 5th items of the will.

It is argued that the direction that the proceeds arising from the sale of the balance of the testator's property, should be held in trust for the support and maintenance of the slaves to be colonized in Africa, and their descendants, creates a perpetuity, and that, therefore, the legacy lapsed, and goes to the heirs-at-law.

We hold that this is not a legitimate conclusion. Such is not the meaning of the word "descendants." This term is equivalent to next of kin, or those who would take under the statute of distributions in this State. It means children and grand-children. 3 *Bro. Ch. Cases*, 169. This word was probably used in accommodation to the Act of 1819, *(Cobb, 995,)* which declares that real and personal property belonging to free persons of color, shall remain with such persons and their *descendants*.

But this is wholly immaterial. If decendants mean children, than the children of the legatees would take, as purchasers. If heirs of the body, the seven legatees named in the will, took an absolute estate, under the Act of 1821.

[1.] Can the American Colonization Society execute this trust? We are inclined to think not, under their charter, as expounded by this Court in the case of the *American Colonization Society vs. Lucius J. Gartrell, adm'r, &c.*, 23 *Ga. R.* 448. That society was authorized and empowered to take and receive property, for the purpose of colonizing, with their own consent, in Africa, free people of color residing in the United States, *and for no other uses and purposes wha'ever.* We will only add here, that a corporation is the creature of the charter which gave it being, and is restricted within the bounds given to it; and has no capacities but those which the charter confers upon it. 2 *Bac. Ab. Title Corporation, (D.) 9, sec. 12 ; Coke*, 120 ; 3 *Modern*, 14. And a corporation has no right to take and hold property, except in the manner, and for the purposes pointed out by the charter. *Ibid, E.* 3, 13.

While it may be true, then, that the Colonization Society could not claim the bequest, under the trust, for any other purposes connected with the object so accurately defined in their charter, still, the bequest itself will not of course fail. It is clear, from the will, that the money given for the support and maintenance of the testator's negroes, was not to take effect until they were made free, by being colonized in Liberia. And then, according to all the past adjudications of this Court, they would be capable of taking. *Crawford and others vs. Vance and others*, 4 *Ga. Rep.* 446 ; *Cooper vs. Blakey*, 10 *Ga. Rep.* 263.

In the latter case cited, this Court held, that when a testator, by his will, directed one of his slaves to be removed to a State, in which the law would allow his manumission, and there set free ; and also bequeathed the sum of two thousand dollars to said slave, to be invested by a trustee, to be appointed for that purpose for the benefit of such slave, when liberated as directed by said will, the bequest was good. That is this case.

As to the best mode of executing this trust, it will become a matter for the discretion of the Chancellor below. We would suggest the following : 1st. That the executors be appointed trustees in lieu of the Colonization Society, provided they be entirely reliable, and are willing to undertake the office. 2d. That they be instructed to invest the fund in State or municipal corporation bonds, and apply the interest annually, or so much thereof as may be necessary, to the support of the legatees in Liberia during their minority; and to invest the surplus of unused income, (if any,) as an addition to the *corpus* of the estate. 3d. As each male *cestui que trust* arrives at age, let his share be given off to him, and consequently, his interest in the trust cease, except in the event of some one of the children dying in minority, when his distributive share of the portion of such deceased minor, shall be given off to him. So upon the coming of

age of any female *cestui que trust,* or her marriage, let the same thing be done.

This plan seems to us to have the merit of distinctness, simplicity, and finality of the trust, within a reasonable time.

If it is thought better to order the executors to to pay it over at once to the legatees, on their arrival in Liberia, or to authorize them to do it then, or at any future period, at their discretion, it would be lawful to do so. But knowing the thriftless habits of these people, and entertaining as we do, serious apprehensions as to their future, we would greatly prefer the scheme which we have proposed, provided the executors can be induced to embark in it.

Judgment reversed.

McDonald J. concurring.

Benning J. dissenting.

I think this will void under the Acts of 1801 and 1818. My reasons for this opinion, are to be found fully stated in *Sanders vs. Ward,* (Atlanta, Mar. 1858,) and in *Adams vs. Bass,* 18 *Ga.* 147. To repeat them here is therefore unnecessary.