BALLANTINE et al. v. BALLANTINE et al.

(Circuit Court, D. New Jersey. March 1, 1907.)

1. WILLS—CONSTRUCTION—LEGACY TO WIFE IN LIEU OF DOWER.

A legacy given to a wife in lieu of dower is based upon a valuable consideration, and is a matter of purchase and not merely of gift, and, in case of ambiguity or conflicting provisions in the will, is entitled to preference over gifts merely voluntary.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 989.]

2. SAME—INCONSISTENT OR AMBIGUOUS PROVISIONS.

A primary provision of a will controls as against inconsistent secondary provisions, and, when a clear gift has been made, it will not be impaired by any subsequent ambiguous or doubtful disposition.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 49, Wills, § 987.]

3. SAME—WILL CONSTRUED.

A testator by his will devised his estate to trustees as an entirety, with directions that the income therefrom should be paid to his wife until his youngest child living should reach the age of 21 years, after which one-third of the income should be paid to the wife and the remaining two-thirds divided equally between his three daughters and his son or their descendants. It was provided that after the death of the wife the income should be equally divided between the children or their descendants, subject to a further provision that one-fifth of the son's share in the estate should be paid to him when he reached the age of 21 years, and three-fifths when he reached the age of 28, subject to the discretion of

the trustees and widow, if living, to delay such payment until they should approve, the remaining one-fifth of his share to be held in trust for the benefit of himself or his direct descendants. The provision for the widow was to be in lieu of dower. *Held*, that the primary purpose of the will was to provide for the widow who was entitled during her lifetime, after the youngest child became 21 years old, to one-third of the income from the entire estate without diminution on account of the provisions relating to the son, and that it was also the purpose of the testator that the shares of the children should be equal; that, therefore, the son was not entitled to receive the fifth parts of his fourth of the entire estate so long as his mother lived, but only to such parts of his fourth of two-thirds of the estate, since any other construction would reduce his mother's share of the income or that of his sisters.

**4. SAME—TRUSTEES—DISCRETION TO WITHHOLD PAYMENT OF LEGACY.**

A testator has the right to postpone the payment of a legacy to a child to a definite period beyond the majority of the legatee and also the right to have its payment further withheld at the discretion of his trustees, and in such case the trust is an active and continuing one, and, in the absence of fraud or an abuse thereof, the discretion of the trustees cannot be controlled by the courts.

**5. SAME—CONSTRUCTION OF TRUST PROVISION.**

A will, after providing for the payment to a son of the testator of four of the fifth parts of his share of the estate, provided that "the remaining one-fifth part of his share shall be held in trust by my executors for the benefit of my said son * * * and his direct descendants." *Held*, that such provision did not create an estate tail which entitled the son to receive such portion at once, but that it was the testator's intention to create a trust which was sufficiently declared and under which the property must be held by the trustees for the contingent benefit of any children the son might leave at his death.

In Equity.

F. Morse Archer (Burr, Brown & Lloyd, of counsel), for complainants.

Pitney & Hardin and Lehlbach & Johnson (John O. H. Pitney, of counsel), for defendants.

CROSS, District Judge. This case is presented to the court upon bill, answer, plea, replication, and proofs. The more important facts briefly stated are these: Peter H. Ballantine, a resident of the city of Newark, N. J., died September 16, 1882, leaving a last will and testament which was duly proved before the surrogate of the county of Essex on the 29th day of September, 1882, whereby, among other things the decedent appointed John H. Ballantine, Robert F. Ballantine, and George G. Frelinghuysen his executors, who took upon themselves the burden of administering his estate. The testator by his said will, after directing the payment of his debts, gave all his property, real, personal, and mixed, to his executors in trust, for the purposes thereinafter mentioned. By the next item of his will he gave to each of his four children, naming them, the sum of $5,000, to be paid them when they would each, respectively, reach the age of 21 years. Then follow items 5, 6, and 7 of the will, which, as they are the principal ones bearing upon the present controversy, are set forth at length.

"V. The remainder of the estate shall be held in trust by my executors and the income thereof paid to my beloved wife Isabelle Linen Ballantine until the youngest child then living shall reach the age of twenty-one years, and on the death of my beloved wife my executors shall hold for the benefit of and

pay the income thereof to my children Sara Linen, Isabel A., George A. and Mary C. or to their direct descendant or descendants of either of them in equal shares subject to the provisions of section VII hereinafter as to the share of George A. Ballantine.

"VI. That when the youngest child then living shall reach the age of twenty-one years the executors shall pay to my beloved wife one-third of the income of my estate and divide the other two thirds in equal shares between my children Sara, Isabel, George and Mary or such of them as may be then living or to their direct descendant or descendants share and share alike per stirpes, provided however that the payment of the income of any child or children aforesaid, or to a descendant or descendants of either shall be first approved by my beloved wife otherwise the same shall be withheld for the benefit of that child from whom it shall be so withheld.

"VII. That one-fifth part of the share of my son George A. Ballantine (provided for in section V) in my estate shall be made over to him absolutely on his reaching the age of twenty-one years and that in addition thereto three-fifths of his share in my estate be made over to him on his reaching the age of twenty-eight years, provided that the executors, with the approval of my beloved wife if she is then living, may delay the payment of the last mentioned part of his share to wit the three-fifths part until such time as they may approve, and that the remaining one-fifth part of his share shall be held in trust by my executors for the benefit of my said son George A. Ballantine and his direct descendants."

It was further provided by the last item of the will that the provisions made therein for his wife were in lieu of dower and right of dower. The testator left him surviving a widow, Isabella L. Ballantine, and four children, Sarah L., Isabel A., George A., and Mary C., all of whom are still living. Sarah L. is the wife of George G. Frelinghuysen, one of the trustees named in the will. She was married at the time of the testator's death, and has two children. Isabel A. is unmarried. George A., one of the complainants, attained his majority October 14, 1887. He has been twice married. By his first wife, from whom he was divorced prior to 1896, he had one child only, a son, who died in infancy. In 1896 he married his present wife, but has had no children by her. Mary C., the testator's youngest daughter, attained her majority in 1891. She is married to Robert W. Cumming, and has five infant children. The widow, all of the children, except George A., and all of the grandchildren of the testator, are parties defendant to this suit. George A. Ballantine, as already stated, is one of the complainants. All of the executors and trustees named in the will qualified. Two of them, however, John H. Ballantine and Robert F. Ballantine, are deceased. The former died in April, 1895, and the latter in December, 1905. The complainants other than said George A. Ballantine are the New York Finance Company, trustee for Mary F. Chapman and for Catharine Stewart Wood, and the Provident Life & Trust Company of Philadelphia, executors under the will of William Brewster Wood, deceased. The New York Finance Company claims to be interested in the share of George A. Ballantine in his father's estate under and by virtue of two assignments made by him to the said company to the extent of $50,000, $40,000 of which sum it claims as trustee and the balance of $10,000 in its own right. The bill of complaint admits that George A. Ballantine has received an agreed upon value for the one-fifth part of the share coming to him upon his reaching the age of 21, under item 7 of the will, but asks for a decree

for the payment of the three-fifths of his share in the estate, which under the same item of the will was to be made over to him on his reaching the age of 28, and also for the payment of the remaining one-fifth part, which is directed to be held in trust by the executors for his benefit and that of his direct descendants. The bill also claims interest, in addition to what has been received, upon all of those shares. As to the three-fifths of George's share, the claim is made that the provision postponing its payments until he became 28 years of age, and further at the discretion of the trustees, is void, but, if otherwise, it is claimed that the discretion has not been properly exercised; while as to the last one-fifth of his share, the claim is made that he is entitled to a like decree, for reasons which will be referred to later. Upon the question of interest the trustees have adhered throughout to a construction of the will which held that George was and is entitled during his mother's lifetime to but one-fourth of two-thirds of the income of the estate, and they have always paid him and received releases from him on that basis, whereas on his behalf it is insisted that he is entitled to the entire income on the one-fifth of the share which was to be made over to him when he became 21, from that time until he assigned it in 1898 and 1900 to his sisters; that as to the three fifths he is entitled to the entire income thereof, at least from the time he became 28 years of age; and that as to the remaining one-fifth the entire income should at all times have been paid directly and exclusively to him.

The issues presented by the pleadings are succinctly stated in the brief of defendant's counsel substantially as follows: (1) Is the discretion to withhold three-fifths of George's share under item 7 of the will valid? If so, has that discretion been properly exercised? (2) Were the trustees justified in paying to the widow one-third of the income on George's one-fourth of the estate either upon a proper construction of the will, or by virtue of an agreement entered into by all of the parties in interest? (3) Is the provision as to the last one-fifth of his share valid, or is it now payable to him?

At the outset of the discussion, it will be well to set forth what seems to me to be the general scheme of the will, which is incomplete and somewhat difficult of construction. There are seeming inconsistencies in it which, however, can be resolved as I think, without doing violence to any of its manifest provisions. Apparently the primary purpose of the testator was to make provision for his widow and infant children. Consequently he directs that all the remainder of his estate, after the payment of his debts, should be held in trust by his executors, to whom it was directly devised, to pay the entire income thereof to his wife, until his youngest child then living should attain the age of 21 years, and, when his youngest child then living should reach that age, he directed his executors, instead of paying all of the income of his estate to the widow as theretofore, to pay one-third of such income to her and divide the other two-thirds in equal shares between his four children, naming them, or to their direct descendant or descendants, share and share alike. He then provided that, on the death of his wife, the executors were to hold the estate for the benefit of, and pay the income therefrom to, his children, or to their direct descendant or descendants as before, subject, however, to the provisions of section 7

as to the share of his son George. If by this scheme the testator manifested any intention to abate or lessen the provision made for his wife between the time his youngest child reached the age of 21 and the death of the widow, I am unable to discover it. This provision for the wife is in lieu of dower. "Such legacies are held to be given for a valuable consideration, the relinquishment of a valuable right or interest, and not merely of bounty, and therefore they are regarded in the light of purchase money, for such right or interest is held to be, and for that reason entitled to preference over gifts, merely voluntary." Howard v. Francis, 30 N. J. Eq. 444, 447; Wiggins v. Wiggins, 65 N. J. Eq. 417, 425, 56 Atl. 148. These authorities are cited simply to show that a legacy of this character is a matter of purchase, and not of gift, and therefore should not be lightly abated or overthrown. It is a general rule of construction that a primary provision will control as against inconsistent secondary provisions. Smith v. Bell, 6 Pet. 68, 8 L. Ed. 322; Walker v. Parker, 13 Pet. 166, 173, 10 L. Ed. 109. When a clear gift has been made, it will not be impaired by any subsequent ambiguous or doubtful disposition. The children are not in terms given specific shares in the residue of the estate, at least during the lifetime of the widow, nor are the trustees required to divide the residue into specific shares and hold such shares separately, and pay over the income therefrom to the widow and children. The property is given to the trustees as an entirety, and it is the income from this entirety which they are to divide and apportion. The fifth item of the will refers forward to the seventh, and the seventh refers back to the fifth, and to the fifth only; and they are thus made measurably interdependent. Moreover, as already stated, the fifth clause, so far as it refers to the children's shares at all, refers to a period after the death of the widow. There is nothing in the will which, to my mind, modifies the sixth clause, so far as the widow's interest therein is concerned. That clause, as was admitted on the argument, unquestionably refers to the entire remainder of the testator's estate, as such estate is described in the fifth clause. The widow was to receive one-third of the income of such remainder, and the remaining two-thirds were to be divided equally between the four children; that is, each child during the lifetime of the widow was to receive one-fourth of two-thirds of the income, no more and no less. The payments of income, however, were to be made so as not to affect either the widow's or any child's share. Nobody's share was to be trenched upon. It was provided in effect that one-third of the estate should be set aside for the benefit of the widow during her lifetime. Hence George is not, nor is any other of the children, entitled to receive more than one-fourth of two-thirds of the income during that period. This conclusion leads to the result that the payments which were to be made to George under the seventh item were to be so made as not to impair the widow's right to one-third of the income of the estate. The payment to George of his entire share in the estate, if allowable, would break up the testator's scheme. Such payment would result in an impairment of the widow's income, or, if that were maintained arbitrarily, it would be at the expense of income plainly given to the daughters. The payments of fifth parts to be made to George at certain times and un-

der certain conditions, as provided in item 7, are therefore payments of fifth parts of one-fourth of two-thirds of the estate, and not of one-fourth of the entire estate. This construction attains a result not only abstractly just and righteous, but one which as it seems to me is more in consonance with the terms of the will than any other. If George should receive his full share of the principal of the entire estate—that is, a full one-fourth part thereof—it would be at the expense of either the widow or his sisters, or of all of them, and this would be so even if he no longer received any income under the sixth item, although his right to income under that item would apparently still remain unimpaired and equal to that of his sisters. I conclude, therefore, that George's one-fourth interest in the estate is subject to contribute towards the provision made for the widow, and that he has therefore received all of the income to which he is entitled.

I have arrived at this conclusion upon what I deem a proper construction of the will. It is claimed, however, on behalf of the defendants, that the same result would be attained under a settlement arrived at in 1900 between George and his sisters. This settlement was evidenced by a formal written agreement duly sealed and acknowledged, and which was embodied in the assignment to and was a part of the consideration of the purchase by his sisters of the one-fifth share which was to be made over to George when he arrived at the age of 21. Written notice under seal of this agreement was given by George to the trustees, and the same was accompanied by releases from him to the trustees and to his mother. The agreement appears to have been made upon a valid and sufficient consideration after full discussion and deliberation, during which the assignor at all times had the advice of independent counsel. The agreement and releases were expressly intended to assure, and I think did assure, independently of the provisions of the will, a full one-third of the income of the entire estate to the widow during her lifetime; and they are in no wise attacked by the bill of complaint, or, indeed, by the evidence. No allegation of bad faith, surprise, or fraud in their execution has been made; hence, so far at least as this suit is concerned, they must stand, and in and of themselves be held to bar George to all claim to additional income either prior or subsequent to their execution.

We come now to the question as to whether any, and, if so, what, part of the principal of George's share is now payable. He has already assigned to his sisters, as appears by the evidence, the one-fifth of his share which was to be made over to him, as the expression is, on his arriving at 21 years of age, so that the first disputed item for consideration is the one directed to be made over to him on his reaching the age of 28 years. It seems to me that the testator had the undoubted right to postpone such payment until the beneficiary arrived at the age named, and even then to make its payment discretionary with his trustees. The shares were devised to trustees, and while so held by them were subservient to a life estate, and, furthermore, to a discretion conferred upon them to withhold payment thereof after George should arrive at the age of 28, with the widow's approval. Such provisions are not infrequent, and their validity is supported by abundant authority. In Chambers et al. v. Smith et al., 3 App. Cases,

795 (21 English Ruling Cases 476), the facts were these: A testator directed his trustees to hold the residue of his estate for the behoof of his children. The shares in the residue were to vest at the testator's death, and be payable six months thereafter; but powers were given to the trustees, "notwithstanding the period above appointed for payment of the shares of the residue," to postpone as long as they should think it expedient to do so the payment of such shares in the case of all or any of the children or grandchildren, and to apply only the interest of the same during the period of the postponement to the use of his children or grandchildren. Power was also given to the trustees to vest the principal in other trustees for the benefit of the children and grandchildren. The trustees for a period of five years paid the whole of the interest and a part of the principal of a share to one of the testator's sons. Subsequent judgment creditors of this son sought to subject his share to the payment of their judgments, whereupon the trustees executed a deed giving to the son a life interest only. An attack was made upon this action of the trustees, but it was sustained, and the right of the creditors to attach the fund was denied. The whole of the opinion is interesting and pertinent to the case at bar. Only short extracts, however, can be given. Lord Hatherly says:

"We find a power in the trustees overruling all directions for payment and vesting before given, and directing them during the postponement to apply the interest for the behoof of the children. This must mean that the child is to have no control over the fund at all when the trustees resolve on postponement. * * * The debtor, James Chambers, could not, I think, in the case before us, insist on payment to himself of any principal moneys or interest the payment of which the trustees under the powers contained in the testamentary disposition thought right to postpone; and for the same reason the arresting creditor cannot make that demand. The trustees might under the will, if they thought fit, pay any given creditor for necessaries, or take any other course to them appearing advisable for the benefit of the legatee, but could not be compelled to pay it as the legatee may direct."

Lord O'Hagan substantially reiterates the views of Lord Hatherly, and adds:

"In this way the settlor provided that his purposes should be carried into effect, and the result was that the beneficiaries took an estate vested in them, and, if the trustees thought proper, to belong to them absolutely at the periods indicated; but it was a qualified estate to be enjoyed by them only on the conditions and at the times which the trustees, in their uncontrolled discretion, should appoint. * * *" James Chambers could not have forced his trustees, against their judgment and in disregard of their duty, to pay him, at once, the money the payment of which they deemed it expedient to postpone; and his creditors can have no higher right. Neither the debtor nor the creditor can be permitted to disregard the direction and defeat the purpose of the settlor of the property. No special mode of postponement is prescribed by the deed of trust. The manner, as well as the time and the conditions of it, was left to their discretion; and the declaration of their resolution to postpone, however made, was sufficient for the purpose."

Lord Blackburn in his opinion goes over much of the ground covered by the previous opinion; and, referring to the testator, says:

"I think that the truster, having a perfect right to give his son James nothing, had also a perfect right to give him a vested interest in a fund, subject to a condition that the trustees might in their discretion divest that fund."

In Hardenburgh et al. v. Blair et al., 30 N. J. Eq. 645, the following state of facts appears:

"The testator gave to his executors a large sum of money in trust to be safely invested and to pay to his son the interest and income of such sum at such times, in such manner, and in such amounts as his executors should deem most prudent for and during his natural life, and, upon his death leaving issue, then to hold said sum for the benefit of such issue."

The court held that the payment of the income to the son was subject to a reasonable discretion on the part of the executors as to the times, manner, and amounts for the payment the son claimed.

In speaking for the Court of Errors and Appeals, Mr. Justice Depue, in delivering the opinion of the court, says:

"There is, in effect, no difference between the language in which the gift of the interest and income to the life tenant is made and a gift in express words of the whole of the interest and income. It is an absolute and unqualified gift of the interest and income derived from the fund invested. The executors have a discretion with respect to the time, manner, and amounts in which it shall be paid over; but this discretionary power, and the mode in which it shall be exercised, will not abridge or qualify the substantive gift to the life tenant of the interest and income. It is his absolutely, and any accumulations of interest during his life, not paid over to him, will, at his death, go to his personal representatives, and not to his issue, under the testator's will. Green v. Spicer, 1 Russ. & M. 395; Barber v. Barber, 3 Myl. & Cr. 688; Beevor v. Partridge, 11 Sim. 228. The distinction is between a mere power, which is left discretionary with the donee, and a trust in connection with which there is a discretion lodged with the trustee as to the manner in which it shall be performed. Simple powers, which are purely discretionary, are not imperative. Trusts are always imperative, and, while a court of equity will not ordinarily interfere with the discretion of a trustee fairly exercised, yet it will not permit the discretion to be so exercised as to defeat the substantial purposes of the trust. 2 Spence's Eq. Jur. 81–88; 2 Lead. Cas. in Eq. 964, note to Hastings v. Glyn. The testator does not direct the payment of the accrued interest and income to the life tenant at any stated time, either annually or otherwise. He expressly gives his executors a discretion as to the time, manner, and sums in which the interest and income shall be paid over. They are not required to pay it over as fast as it accrues, or whenever demanded. They have a reasonable discretion over the subject, and the life tenant is entitled to the interest and income when collected by the executors, subject to a reasonable discretion on the part of the executors, as to the time, manner, and amount of the payments."

A provision not unlike the foregoing, except that it embraced both principal and income, was upheld by the Supreme Court of the United States in Nichols, Assignee, v. Eaton, 91 U. S. 716, 23 L. Ed. 254. The facts show that a testator gave the income of some trust property to his son, which, however, was to cease on alienation of the property or upon his insolvency or bankruptcy, whereupon the income was to be accumulated and added to the principal, with discretionary power in the trustees in the application of such accumulations to the son or his family. Power was also given the trustees by the will in their discretion to transfer one-half of the trust fund to the son at any time. The son became bankrupt, and his assignee brought suit to recover the accumulation. The right of the assignee to relief was denied, and in the course of the opinion Mr. Justice Miller says:

"No case is cited, none is known to us, which goes so far as to hold that an absolute discretion in the trustee—a discretion which, by the express lan-

guage of the will, he is under no obligation to exercise in favor of the bankrupt—confers such an interest on the latter that he or his assignee in bankruptcy can successfully assert it in a court of equity or any other court. * * * Neither of the clauses of the provisos contain anything more than a grant to the trustees of the purest discretion to exercise their power in favor of testatrix's sons. It would be a sufficient answer to any attempt on the part of the son in any court to enforce the exercise of that discretion in his favor that the testatrix has in express terms said that such exercise of this discretion is not 'in any manner obligatory upon them,' words repeated in both of these clauses. To compel them to pay any of this income to a son after bankruptcy, or to his assignee, is to make a will for the testatrix which she never made: and to do it by a decree of a court is to substitute the discretion of the chancellor for the discretion of the trustees, in whom alone she reposed it. When trustees are in existence, and capable of acting, a court of equity will not interfere to control them in the exercise of a discretion vested in them by the instrument under which they act. Hillon, Tr. 486; Lewin, Tr. 538; Boss v. Goodsall, 1 Younge & C. Ch. 617; Maddison v. Andrew, 1 Ves. Sr. 60. And certainly they would not do so in violation of the wishes of the testator. * * * Why a parent or one who loves another, and wishes to use his own property in securing the object of his affection, as far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence or incapacity for self-protection, should not be permitted to do so, is not readily perceived."

See, also, the cases of Holmes v. Penney, 3 K. & J. 90; Cantwell v. Higgins, 1 Jur. 791; In re Coleman, 39 Ch. Div. 443; Hall v. Williams, 120 Mass. 344; Foster v. Foster, 133 Mass. 179; Nickerson v. Van Horn, 181 Mass. 562, 64 N. E. 204; Meek v. Briggs, 51 N. W. 456, 87 Iowa, 610, 43 Am. St. Rep. 410; Jarboe v. Hey, 122 Mo. 341, 26 S. W. 968; Stone v. Westcott, 18 R. I. 685, 29 Atl. 838. The foregoing cases all deal with trusts vested in executors with power to withhold payment from beneficiaries at their discret'on. It is true that the most of them deal with the right to withhold income, rather than principal, but I think the right to withhold principal under a discretionary power is equally clear and equally well supported. Indeed, the case of Chambers v. Smith, supra, is directly in point; that case dealt with both principal and interest, and the same is true of Nichols, Assignee, v. Eaton, 91 U. S. 716, 23 L. Ed. 254. The case of Claflin v. Claflin, 149 Mass. 19, 20 N. E. 454, 14 Am. St. Rep. 393, is also in point. In that case it was contended that the provision of a will postponing the payment of a legacy beyond the time when the beneficiary was 21 years old was void. The court upheld the provisions of the will and said:

"We are unable to say that the directions of the testator to the trustees to pay the money to the plaintiff when he reaches the age of 25 and 30 years are against public policy, or are so far inconsistent with the rights of property given to the plaintiff that they should not be carried into effect."

In this state such postponement has been upheld in cases where the property was vested in trustees and a discretion given to them or any duty imposed upon them, which could properly be said to make the trust an active one. In Cooper et al. v. Cooper, 36 N. J. Eq. 121, the testator directed that the defendant's share of his personal estate should be retained in the hands of his trustee and the income thereof appropriated to the defendant's support and maintenance at their discretion. He further directed that the defendant's share of his real estate should continue to be held in trust, and the income alone thereof

appropriated as had previously been directed in the case of his share of the personal estate. On a partition of the testator's real estate, the chancellor held that the defendant's share of the proceeds on sale thereof must be retained by the trustees. He held the trust to be an active one involving confidence,· discretion, and active duty. To the same effect is Force v. Brown et al., 32 N. J. Eq. 118. The case of Randolph v. Randolph, 40 N. J. Eq. 73, is also instructive. The will there construed was that of the late Governor Randolph. By it the testator set aside $200,000 for the benefit of his children. The chancellor held that, while the principal of the trust fund belonged to the children as well as the income, they were nevertheless not entitled to a division of the fund among them, for the reason that the trust was not a simple, but a special, one, and that they did not therefore have a right to the actual possession of the property and to call upon the trustees to convey the legal estate at their discretion; citing Lewin on Trusts, 21, and Cooper v. Cooper, supra. I think that the principle which distinguishes the case at bar from those cited by complainant's counsel lies in the fact that herein we find not only a trust, but an active trust. Not only is the principal of the fund, as already shown, measurably subservient to a life interest, but its payment to the beneficiary by the trustees is not to be made arbitrarily, and at all events, but at their discretion, a discretion which, in the absence of fraud, the court cannot control. We are not dealing with a dry trust, but an active and continuing one; and I discover nothing whatever in its terms which creates or tends to create a perpetuity, or which is otherwise opposed to public policy. The testator had the right to postpone its payment to a definite period beyond the majority of the beneficiary, and he had an equal right to have its payment further withheld at the discretion of his trustees. There is no valid reason why a testator may not confer a discretionary power upon trustees to parcel out the payment of the principal of a legacy just as he may undoubtedly parcel out the income of a fund. It would be a hard and unreasonable rule which held otherwise, since it would compel a parent who doubted the wisdom of giving the principal of his estate to a son at majority, but who would like to have portions thereof paid to him from time to time, in the discretion of trustees, to leave the principal to a remainderman while the income alone was doled out to the son.

Coming, now, to the exercise of the discretion of the trustees in withholding payment of the three-fifths interest mentioned in the seventh item of the will, it is not my purpose to set out at any considerable length the reasons which impelled them to this course. It is sufficient to say that the testimony to my mind discloses that they were ample and sufficient. It shows in brief that, as to the one-fifth share payable at 21, George requested the executors to withhold its payment, and he never requested payment of the three-fifths share at all or at least not until after the time when he now claims it became payable. It is not denied that the trustees in the exercise of their discretion might have acted so unreasonably as to invoke judicial control, but no such case is here presented. The evidence discloses that the question of withholding payment of the three-fifths was from time to time talked over by the trustees and their determination to withhold payment thus

arrived at had at all times the approval of the widow. The matter was under consideration at different times, and the widow was always consulted, and always expressed herself unwilling to approve the payment to her son of the three-fifths in question. There can be no doubt from the undisputed testimony that her attitude on this question was always the same. Moreover, the trustees had sufficient reason for withholding the payment. Their refusal was justifiable. It is only too apparent that, if the payment to George had been made by them, the entire fund would long before this have been spent. He was inattentive to business, grossly extravagant, and expended within a comparatively short period not only a large income, but also the principal, which he received from his sisters for the one-fifth of his share assigned to them, as well as a far larger sum received from his grandfather's estate, notwithstanding which he was, during much of the time, as he is now, heavily in debt. It appears, furthermore, that even in the hands of the trustees George has managed to seriously cripple and impair his estate, by from time to time assigning portions thereof to his creditors, which assignments have naturally caused the trustees much anxiety, embarrassment, and expense. There is not a word in the testimony to show that the trustees have abused their discretion; on the contrary, it is conclusively shown to have been sound and honestly and wisely exercised, and such, moreover, would be the presumption of law in the absence of testimony to the contrary. Their conduct is not open to censure. They have shown praiseworthy forbearance under somewhat trying circumstances, and have apparently with honest purpose done all that lay in their power to protect George from himself and from the harpies who have constantly surrounded him.

The last clause of the seventh item of the will remains to be considered. The language used is as follows:

"And that the remaining one-fifth part of his share (George's) shall be held in trust by my executors for the benefit of my said son George A. Ballantine and his direct descendants."

I understand complainant's counsel to contend that descendants here means "issue," and that "issue" is the same as heirs of the body, and from this it is argued that the testator created an estate in tail at common law, which as to so much of the share as consists of real estate would be converted into a life estate in George, with remainder to his children, and that, as to so much of the share as consists of personalty, the estate tail would be immediately converted into an absolute gift in George, the first taker, and that consequently he is entitled to receive this portion of his share immediately. I think this argument, however, is contrary to the plain intention of the will, and that under such circumstances an estate tail ought not to be, and will not be, presumed. If the complainant's argument is sound, George became entitled to this share, subject to his mother's interest therein, immediately upon the death of his father, and while he was in his minority. The seventh section of the will, however, plainly shows that the part of George's share now under consideration was intended to be the last, as, indeed, it was the last disposed of. The scheme of the will was that one-fifth should be payable at 21, three-fifths at 28, unless payment should be

postponed by the executors, and then "the remaining one-fifth part."
If it had been the testator's intention that George should have this
one-fifth at his death, it would have been given directly to him, and
not have been given to trustees at all, nor would his descendants have
been mentioned. This portion of the share is plainly a part of a trust,
the direction is positive—"it shall be held in trust by my executors."
An interpretation of the will which would have required this share to
be paid to George during his minority would violate every provision
of the third, fifth, and sixth sections of the will. Such a construction
will not be adopted if it can be avoided. The clause certainly did not
intend a direct and simple gift to George. A trust was intended, and
I think was sufficiently declared. The word "descendants" is used
in at least two other places in the will and as used is equivalent to the
word "children." In Walker et al. v. Walker's Ex'rs et al., 25 Ga.
420, an entire estate was directed to be invested and transferred to the
American Colonization Society to be held in trust by it for the main-
tenance and support of seven specified slaves and their descendants.
It was claimed that this device created a perpetuity and was void.
In dealing with this question, the court, at page 428, said:

"We hold that this is not a legitimate conclusion, such is not the meaning of
the word 'descendants.' This term is equivalent to next of kin, or those who
would take under the statute of distributions of the state. It means children
and grandchildren. 3 Bro. Ch. Cases 169."

The provision was intended as a trust for the benefit of George and
his children, and, so construed, George takes a life estate, with re-
mainder in his children. In Steward v. Knight et al., 62 N. J. Eq.
232, 49 Atl. 535, the word "children" was construed to mean "de-
scendants." By using these words interchangeably, the intent of
the testator is preserved. Furthermore, it will be noticed that the lan-
guage used is not "descendants," but "direct descendants," which may
properly mean nearest or immediate descendants; that is, those who
would be first or immediately in the line of descent, as children. In
Noe v. Miller, 31 N. J. Eq. 234, Vice Chancellor Van Fleet con-
strued a gift made to a daughter, free from the control of her hus-
band, and which was to be her's and her child's or children's forever, as
giving the wife a life estate, with remainder in her children. In his
opinion, after citing numerous authorities, he says:

"Most of these cases were decided by a simple expression of opinion, with-
out any attempt by the judge to give the course of reasoning by which he
reached his conclusion. The construction adopted, however, seems to me to be
reasonable and just. I think it is much more natural and reasonable to con-
clude, where a father makes a bequest of a particular sum or fund to a child
and also to the children of such child jointly, without indicating in any way
when their enjoyment shall commence, that he intends the parent shall have
simply the income or produce during life, and that the principal shall go to
the children on the death of their parent, than that he meant that his grand-
children should share equally with their parent at once, and have a right to
demand a division of the fund as soon as it is payable. I therefore hold, in
accordance with what I deem the decided weight of authority, that, by the
proper construction of this bequest, the complainant's intestate took a life
estate in the legacy, and her children the principal or remainder."

And this rule is the one applied and adopted apparently in all cases
where a provision of this character is made in trust. Where, how-

ever, there is no trust declared, but a simple devise is made to a person and his or her children, the parent and children take as tenants in common. In this particular case, however, whichever construction is adopted, the result is the same. George at present. is ,the only beneficiary, but his estate is subject to be divested to let in after-born children. It is therefore a contingent estate, and must continue to be held in trust. Among the many cases supporting the doctrine laid down in Noe v. Miller, supra, are Vaughan v. Headfort, 10 Sim. 639; Combe v. Hughes, L. R. 14 Eq. 415, 41 L. J. Ch. 693; Audsley v. Horn, 1 De G., F. & J. 226, 29 L. J. Ch. 201; Ward v. Gray, 26 Beav. 485; Jeffrey v. De Vitre, 24 Beav. 296; Morse v. Morse, 2 Sim. 485. In this last case it was held that a gift in trust for a daughter and children should be held by the trustee in trust for the daughter for life, and, after her decease, for all her children, whether "born in the testator's lifetime or after his death." See, also, Hannan v. Osborn, 4 Paige (N. Y.) 336; Rich v. Rogers, 14 Gray (Mass.) 174.

In conclusion I would say that, whatever construction is put upon the clause under consideration, it seems to me that the fund must continue to be held in trust, at least during the lifetime of George, and that is all that need now be determined. The result I have reached upon the whole case is that George has received all of the income under his father's will to which he is entitled, and that upon a proper construction of the will, and under the evidence, there is no principal payable to him at the present time.

The bill will therefore be dismissed with costs.