### In re BALLANTINE.

(District Court, E. D. Pennsylvania. June 1, 1910.)

#### No. 3,079.

ASSIGNMENTS (§ 52*)—EQUITABLE ASSIGNMENTS—CONSTRUCTION.

.A bankrupt having assigned his interest under certain wills to a finance company to secure repayment of $50,000, certain French creditors attached the interest of the bankrupt in the hands of the executors, and in order to procure a release of the attachment, so that the finance company might receive certain payments from the executors, a letter, approved by the bankrupt, was written to the foreign creditors' attorney by the president of the finance company, agreeing that after payment of the amounts due it, including liens and actual disbursements, expenses, and counsel fees in certain suits, the finance company would pay to such attorney from the money coming into its hands on account of the bankrupt the full amount of the claims which he represented, and which were fully specified therein, on the faith of which the attachment was released. *Held*, that such letter constituted an equitable assignment of the bankrupt's interest in such estates; the intention being to make over the bankrupt's interest pro tanto in satisfaction of the claims.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 107–111; Dec. Dig. § 52.*]

In the matter of bankruptcy proceedings of George A. Ballantine. On certificate of referee rejecting claims. Reversed.

Samuel W. Cooper and Alfred W. Varian, for claimants.
Reynolds D. Brown, for trustee.

J. B. McPHERSON, District Judge. The controlling question in this case is whether the agreement of the bankrupt with the claimants was an equitable assignment of his life interest under the last wills of his father and his grandfather. At the time the agreement was made, the New York Finance Company was the holder of two assignments of the bankrupt's interest under these wills. These assignments were in form an absolute transfer of all his interest, with a collateral clause securing the repayment of $50,000, and by virtue of their provisions the trustees of the two estates had for several years been paying over to the Finance Company the income that belonged to the bankrupt. This being the situation, the claimants issued foreign attachments and levied upon the bankrupt's interest. The trustees thereupon refused

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to continue payments to the Finance Company, and various embarrassments arose, or at least were believed either to exist or to be threatened. A suit was then pending in the United States Circuit Court for the District of New Jersey, in which the court was asked to declare that the bankrupt's interest was an absolute estate, and not merely for life. It was apparently believed that the foreign attachments might in some way affect the decision unfavorably. At all events, the parties who are immediately interested in the present dispute agreed that the attachments should be withdrawn, and that the claimants should be provided for in a different way. Accordingly, on February 1, 1907, the agreement in controversy was made. It is contained in a letter, which was addressed to Mr. Varian, the attorney for the claimants, and was delivered to him by Mr. Depue, the president of the Finance Company, in the presence of the bankrupt.

"New York, February 1st, 1907.

"In re Ballantine.

"Alfred W. Varian, Esq., 44 Pine Street, New York—Dear Sir: Confirming understanding between our Mr. Depue and you with reference to certain claims represented by you against George A. Ballantine, we beg to state that after the payment of amounts due by George A. Ballantine to New York Finance Company and to New York Finance Company as trustee, and also the payment of any other actual liens which may exist upon said George A. Ballantine's interest in the estates of Peter Ballantine, deceased, and Peter H. Ballantine, deceased, and after the payment of actual disbursements, expenses and counsel fees in re suit brought for the construction of the wills of said decedents, we will pay to you as counsel for the claimants mentioned below and from the money coming into our hands for account of said George A. Ballantine, the full amount of said claims as follows:

"Worth, with interest from 1899, 8,615 francs.

"Laferriere, with interest from 1904, 14,598.50 francs.

"Guillot & Cie, with interest from 1905, 1,117.35 francs.

"Yours very truly,        New York Finance Company,

         "Arthur W. Depue, President.

"I have read the above letter, and hereby authorize the New York Finance Company to carry out the provisions therein contained, which I hereby approve.        George A. Ballantine."

A month afterwards the Circuit Court refused to adopt the desired construction of the wills (Ballantine v. Ballantine [C. C.] 152 Fed. 775), and decided that the bankrupt did not take an absolute estate. This decision was affirmed in February, 1908, by the Court of Appeals for the Third Circuit (Ballantine v. Ballantine, 160 Fed. 927, 88 C. C. A. 109), and a rehearing was denied on March 26th. Thereupon a petition in bankruptcy was filed against Ballantine, and upon his admission of insolvency an adjudication was entered on March 30. In June, 1909, a sale of the bankrupt's life interest was confirmed, and part of the purchase money was directed to be paid to certain preferred creditors. The remainder is now in the hands of the trustee in bankruptcy, and the dispute arises over its distributon. Certain facts pertinent to the controversy have been agreed upon by the parties, and are as follows:

"That prior to the 1st day of June, 1906, the said Maison Laferriere, the said firm of Worth, and the said Guillot & Cie, each forwarded their respective claims for collection to one Alfred W. Varian, Esq., an attorney at law, having an office and practicing in the city, county, and state of New York.

"That between the 1st day of June, 1906, and the 1st day of January, 1907, the said Varian made repeated efforts to locate the said George A. Ballantine without success, and on or about the last-mentioned date turned the said several claims over to Edward K. Luce, an attorney and counselor at law, residing and practicing in the state of New Jersey, with instructions to attach the interests of George A. Ballantine in the estates of his father and grandfather, viz., the estates of Peter H. Ballantine, deceased, and Peter Ballantine, deceased, in actions to be instituted by said Luce on behalf of the said creditors Worth, Laferriere, and Guillot.

"That the said Luce duly caused the interests of the said George A. Ballantine in the said estates of Peter Ballantine and Peter H. Ballantine, deceased, to be duly attached on behalf of said creditors, as instructed.

"That immediately upon said attachments being levied the executors of the estates of Peter Ballantine and Peter H. Ballantine notified the said George A. Ballantine thereof, and also the New York Finance Company, a corporation whose interest is hereinafter described and set forth.

"That the principal ground of the attachment was that the said George A. Ballantine was a nonresident debtor.

"That theretofore, and on or about the 30th day of December, 1902, the said George A. Ballantine, for the purpose of securing certain indebtedness of George A Ballantine to the New York Finance Company, duly made, executed, acknowledged, and delivered two separate assignments, whereby he granted, bargained, sold, assigned, transferred, conveyed, released, and set over to the New York Finance Company, as trustee, its successors and assigns, any and all his estate, right, title, and interest of any kind, form, or description whatsoever, in and to the principal and income of the estates of said Peter Ballantine, deceased, and said Peter H. Ballantine, deceased, to which he was then, and might thereafter become, entitled under and by virtue of said wills of Peter Ballantine and Peter H. Ballantine, deceased, or either of them, or in any other way whatsoever, copies of which assignments are annexed to this statement, and made a part hereof, and marked Exhibits A and B.

"That said assignments mentioned in the last paragraph continued in full force and effect to the filing of the petition in bankruptcy herein, except that certain payments had been made by the executors of said estates to the said New York Finance Company during the said period.

"That on or about the date of levying of the attachments by the said Luce on behalf of the said creditors, Worth, Laferriere, and Guillot & Cie, as above mentioned, the said George A. Ballantine and the said New York Finance Company were daily expecting a payment on account of income from the estates of Peter Ballantine, deceased, and Peter H. Ballantine, deceased.

"That the executors of the said estates, in notifying the said George A. Ballantine and the New York Finance Company of the said attachments, advised the said George A. Ballantine and the New York Finance Company that, in view thereof, the said executors could not safely proceed to make any payments to any one pending the adjustment of the claims of the respective parties to said fund.

"That on or about the 29th day of January, 1907, Messrs. Grey & Archer, attorneys and counselors at law, of the city of Camden, N. J., then representing the said George A. Ballantine, wrote a letter to the said Luce, the attorney in New Jersey for the attaching creditors, requesting that said attachments be released.

"The said letter of Messrs. Grey & Archer was forwarded by said Luce to the said Varian, who replied thereto, a copy of which reply is annexed hereto and marked Exhibit C.

"That on or about the 1st day of February, 1907, the president of the New York Finance Company, the assignee of the interests of George A. Ballantine in said estates, called upon said Varian in reference to the attachments levied against the interests of the said George A. Ballantine, at which interview he called attention to the assignments above mentioned, and stated that George A. Ballantine would make any arrangement to protect the several claims represented by said Varian, but wanted the attachments vacated, so as to release

certain moneys about to be paid from the said estates, and that any arrangement that could be agreed upon would be approved by Mr. Ballantine.

"Thereafter certain letters were duly exchanged between the parties, which indicated the terms and the intent of the agreement between the said Varian, representing said creditors, and the said George A. Ballantine and the New York Finance Company. One is a letter dated February 2, 1907, from the said Varian to the New York Finance Company, which attempts briefly to confirm the verbal understanding of February 1st, 1907. This letter is annexed hereto and marked Exhibit D.

"That in the meantime there had been prepared and duly executed the several letters and papers, dated February 1, 1907, signed by the New York Finance Company and George A. Ballantine, which are annexed to the proofs of claim and marked Exhibits B–1, B–2, and B–3.

"These papers, viz., Exhibits B–1, B–2, and B–3, were delivered in person by said George A. Ballantine and Arthur W. Depue, president of the New York Finance Company, to the said Varian at his office in the borough of Manhattan, city of New York, on the 4th day of February, 1907.

"That the said Varian thereupon instructed the said Luce to withdraw the attachments and duly notify the said New York Finance Company that he had done so, as per letter annexed hereto and marked Exhibit E.

"That the said attachments were duly withdrawn, and the interests of the said George A. Ballantine in said estates were duly released therefrom, and thereafter the said New York Finance Company and the said George A. Ballantine received from time to time various sums of money from the said estates on account of the interests of said George A. Ballantine, which had been attached as aforesaid.

"That, as further evidencing the intent of the parties hereto, there is annexed a letter from the said Varian to the said New York Finance Company, dated February 28, 1908, which is marked Exhibit F, and a further letter from Charles H. Burr, an attorney of the New York Finance Company, and also one of the attorneys for George A. Ballantine, to the said Varian, dated January 25, 1908, and marked Exhibit G.

"That the petition in bankruptcy herein was filed on the 28th day of March, 1909.

"That since the filing of the petition in bankruptcy the interests of the said bankrupt in the estates of said Peter Ballantine, deceased, and Peter H. Ballantine, deceased, were duly sold for the sum of $128,000. That about $100,000 of said sum passed to the New York Finance Company and other creditors holding assignments of the interests of George A. Ballantine in the said estates, and made prior to February 1, 1907.

"That it was not disclosed to the said Varian and said Varian was not informed nor aware of the existence of any other assignments of the interest of George A. Ballantine in or to said estates until after the filing of the petition in bankruptcy herein.

"That the said Varian, nor the said creditors whom he represented, knew that the said George A. Ballantine was indebted to others, except to the New York Finance Company.

"That the trustee in bankruptcy has received the sum of $25,968.44 out of the $128,000 paid upon the sale of the interests of the said George A. Ballantine in the said estates.

"This stipulation is made without prejudice to the said creditors producing evidence of additional facts deemed by them to be material."

As it seems to me, the meaning of the February letter is more likely to be correctly understood if all the negotiations between the parties are considered; and this is also the view necessarily implied in the agreed statement of facts. It would be proper, therefore, to take into account the other letters referred to in that statement, for I think they throw some useful light on the situation. But, even if attention be directed solely to the letter of February 1st, it satisfactorily appears from that writing that all the parties thereto contemplated that the

Finance Company was not only to receive enough of the bankrupt's income to pay its own claim of $50,000, but was to continue receiving the income until the expenses incurred in the suit of Ballantine v. Ballantine were also repaid—the Finance Company had evidently been advancing these expenses in whole or in part—and was then still to continue the receipt until the present claimants should be paid in full. The bankrupt's assent to this arrangement was, I think, an equitable assignment of so much of his interest as was necessary to discharge the claims in dispute. This may appear more plainly if it be supposed for the moment that on February 1st there was already enough money in the hands of the Finance Company to carry out all the provisions of the agreement—to pay its own $50,000, to pay the expenses of the New Jersey suit, and to pay the French claimants. In that event no room for controversy would exist. The agreement then would have operated immediately, and would have transferred in equity a part of the fund to the claimants. The fact that the whole of the fund was not yet in the Finance Company's hands, but was to reach that company gradually and by installments, does not, I think, change the situation essentially. The parties treated the fund as potentially there already, and they dealt with it on that assumption. The claimants had an apparently valid lien on the bankrupt's property in New Jersey, and they gave up this advantage on the distinct understanding that they were to be as fully protected in New York, although the method of protection could not be the same.

The subject need not be further pursued. The arguments of counsel have been considered, but it seems to me that the decision of the present case depends wholly upon the intention of the parties as it may be drawn from the facts agreed upon and otherwise in proof, and in my opinion the intention was to make over the bankrupt's interest pro tanto in satisfaction of these claims.

The order of the referee is reversed, and it is now decreed that the agreement of February 1st was an equitable assignment of the bankrupt's interest.